1  Baruch C. Cohen, Esq. (SBN 159455)
**LAW OFFICE OF BARUCH C. COHEN**
2      A Professional Law Corporation
4929 Wilshire Boulevard, Suite 940
3  Los Angeles, California 90010
(323) 937-4501      Fax (888) 316-6107
4  e-mail: baruchcohen@baruchcohenesq.com

5  Attorneys for Plaintiffs OC WEST, LLC, a Montana Limited Liability Company;
LIBERTY FINANCIAL USA, LLC, a Delaware Limited Liability Company; and
6  LIBERTY DEBT SOLUTION, LLC, a Nevada Limited Liability Company

7                    **UNITED STATES BANKRUPTCY COURT**

8                     **CENTRAL DISTRICT OF CALIFORNIA**

9                          **SANTA ANA DIVISION**

10

11  In re                                  Chapter 7 Case No.  8:19-bk-10153-SC

12  THOMAS JOSEPH LYNCH,                    Assigned to the Honorable Scott C. Clarkson

13          Debtor                          Adversary # 8:19-ap-01069-SC

14  ─────────────────────────

15  OC WEST, LLC, a Montana Limited         **PROOF OF SERVICE:**
Liability Company; LIBERTY               - **SUMMONS & NOTICE OF STATUS**
16  FINANCIAL USA, LLC, a Delaware            **CONFERENCE**
Limited Liability Company; and           - **COMPLAINT FOR NON ISCHAR EABILITY**
17  LIBERTY DEBT SOLUTION, LLC, a            **OF  EBT  ENIAL OF  ISCHAR E**
Nevada Limited Liability Company,         **UNFAIR  UNLAWFUL & FRAU  ULENT**
18                                           **BUSINESS PRACTICES**
Plaintiffs               - **NOTICE OF COMPLIANCE WITH LBR 7026-1**
19  vs.
20  THOMAS JOSEPH LYNCH,                    ***Status Conference Hearing***:

21          Defendant                       Date: 7-3-2019
Time: 11:00 a.m.
22                                          Place: 411 West Fourth Street
Santa Ana CA 92701
23  ─────────────────────────              Courtroom: 5C

24      **TO THOMAS JOSEPH LYNCH, AND HIS ATTORNEY OF RECORD**:

25      Enclosed please find:

26  1.     Complaint For: Nondischargeability of Debt Pursuant to: 11 U.S.C. § 523(a)(2)(A); 11

27      U.S.C. § 523(a)(2)(B); 11 U.S.C. § 523(a)(4); 11 U.S.C. § 523(a)(6); Denial of Discharge

28

1    Pursuant to: 11 U.S.C. § 727(a)(2)(A); 11 U.S.C. § 727(a)(2)(B); 11 U.S.C. § 727(a)(3); 11

2    U.S.C. § 727(a)(4)(A); 11 U.S.C. § 727(a)(4)(D); 11 U.S.C. § 727(a)(5); 11 U.S.C. §

3    727(a)(12)(B); Unfair, Unlawful and Fraudulent  Business Practice Cal. Bus. & Prof. Code

4    § 17200. Et Seq.

5    2.    Summons & Notice of Status Conference, setting the response date to the Complaint for 5-

6        17-2019 [Doc-3-1], and the Status Conference for 7-3-2019.

7    3.    Early meeting of Counsel and Status Conference Instructions [Doc-3]. Please take notice

8        that compliance with Local Bankruptcy Rule 7026-1 is required in this proceeding.

9

10   DATED:        April 19, 2019            LAW OFFICE OF BARUCH C. COHEN
                                            A Professional Law Corporation
11
                                            By    /S/ Baruch C. Cohen
12                                          Baruch C. Cohen, Esq.
                                            *Attorneys for Plaintiffs*
13                                          OC WEST, LLC, LIBERTY DEBT SOLUTION, LLC,
                                            and LIBERTY FINANCIAL USA, LLC
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Baruch C Cohen<br>4929 Wilshire Blvd Ste 940<br>Los Angeles, CA 90010<br><br>323–937–4501<br><br><br><br><br><br>*Plaintiff or Attorney for Plaintiff* | |

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA

| In re:<br><br><br> Thomas Joseph Lynch, JR<br><br><br>Debtor(s). | CASE NO.:  8:19–bk–10153–SC<br><br>CHAPTER:  7<br><br><br>ADVERSARY NUMBER: 8:19–ap–01069–SC |
|---|---|
| OC West, LLC<br><br>**(See Attachment A for names of additional plaintiffs)**<br><br>Plaintiff(s)<br><br>Versus<br><br>Thomas Joseph Lynch<br><br><br>Defendant(s) | **SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING [LBR 7004–1]** |

TO THE DEFENDANT(S): A Complaint has been filed by the Plaintiff against you. If you wish to defend against the Complaint, you must file with the court a written pleading in response to the Complaint. You must also serve a copy of your written response on the party shown in the upper left–hand corner of this page. The deadline to file and serve a written response is **05/17/2019.** If you do not timely file and serve the response, the court may enter a judgment by default against you for the relief demanded in the Complaint.

 A status conference in the adversary proceeding commenced by the Complaint has been set for:

| | |
|---|---|
| **Date:** | **July 3, 2019** |
| **Time:** | **11:00 AM** |
| **Hearing Judge:** | **Scott C Clarkson** |
| **Location:** | **411 W Fourth St., Crtrm 5C, Santa Ana, CA 92701** |

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2016*                Page 1                **F 7004–1.SUMMONS.ADV.PROC**

**You must comply with LBR 7016–1, which requires you to file a joint status report and to appear at a status conference.** All parties must read and comply with the rule, even if you are representing yourself. You must cooperate with the other parties in the case and file a joint status report with the court and serve it on the appropriate parties at least 14 days before a status conference. A court–approved joint status report form is available on the court's website (LBR form F 7016–1.STATUS.REPORT) with an attachment for additional parties if necessary (LBR form F 7016–1.STATUS.REPORT.ATTACH). If the other parties do not cooperate in filing a joint status report, you still must file with the court a unilateral status report and the accompanying required declaration instead of a joint status report 7 days before the status conference. **The court may fine you or impose other sanctions if you do not file a status report. The court may also fine you or impose other sanctions if you fail to appear at a status conference.**

> **KATHLEEN J. CAMPBELL**
> **CLERK OF COURT**

Date of Issuance of Summons and Notice of Status Conference in Adversary Proceeding: <u>April 17, 2019</u>

> By: <u>    "s/" Nickie Bolte    </u>
>
> Deputy Clerk



This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2016*                          Page 2                      **F 7004–1.SUMMONS.ADV.PROC**

# ATTACHMENT A
Names of plaintiffs and defendants

| Plaintiff(s): | Defendant(s): |
|---|---|
| OC West, LLC<br>Liberty Financial USA, LCC<br>Liberty Debt Solution, LLC | Thomas Joseph Lynch |

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

**ATTACHMENT A**

# UNITED STATES BANKRUPTCY COURT

### Early meeting of Counsel and Status Conference Instructions

1. **Service of Order.**  A copy of this Order re: Rule 26(f) Meeting, Initial Disclosures, and Scheduling Conference must be served with the summons and complaint.  The proof of service of the summons and complaint must indicate that a copy of this order was served therewith.

2. **Local Bankruptcy Rule 7026-1.**  Compliance with Local Bankruptcy Rule 7026-1 (ΑLBR 7026-1") is required in ALL adversary proceedings.

3. **Rule 26(f) Meeting.**  Unless all defendants default, the parties must meet and confer pursuant to Rule 26(f) of the Federal Rules of Civil Procedure (ΑRule 26(f) Meeting@) at least 21 days before the status conference date set forth in the summons.  **The status conference set forth in the summons shall also serve as the initial Rule 16(b) Scheduling Conference in this adversary proceeding.**

The parties are jointly responsible for arranging and attending the Rule 26(f) Meeting, which may be conducted in person or by telephone.  During the Rule 26(f) Meeting, the parties must, at a minimum: (a) discuss the nature and basis of their claims and defenses and the possibilities for a prompt settlement or resolution of the case; (b) make or arrange for the initial disclosures required by Rule 26(a)(1); and ( c) develop a proposed discovery plan.  The discussion of claims and defenses must be substantive and meaningful.  The parties are directed to approach the Rule 26(f) Meeting cooperatively and in good faith.

4. **Initial Disclosures.**  Rule 26(a)(1) states that a party must, without awaiting discovery request, provide to other parties:

    a.   The name and, if known, the address and telephone number for each individual likely to have discoverable information - along with the subjects of that information - that the disclosing party may use to support its claims or defenses,

unless the use would be solely for impeachment.

    b.   A copy of - or a description by category and location - of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;

    c.   A computation of each category of damages claimed by the disclosing party - who must also make available for inspection and copying under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered; and

    d.   For inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.

F.R.Civ.P.26(a)(1)(A). Rule 26(a)(1) requires a party to make its initial disclosures based on the information that is reasonably available to it.  A party is not excused from making its disclosures because it has not fully completed its investigation of the case or because it challenges the sufficiency of another party=s disclosures or because another party has not made its disclosures. F.R.Civ.P.26(a)(1)(E).

    **5.**  **Alternative Dispute Resolution (AADR@).**  The parties must explore the feasibility of ADR to reach a settlement or early resolution of the adversary proceeding.  The specific reasons for any decision not to participate in a form of early ADR must be explained in the Joint Status Report.  If the parties elect not to participate in an early ADR effort, the Court may nonetheless direct the parties to ADR before trial

    **6.**  **Discovery Plan.**  At the Rule 26(f) Meeting, the parties must also discuss issues about preserving discoverable information and develop a proposed discovery plan.  The discussion regarding discovery following the initial disclosures must address the relevance of the discovery sought and the sequence and timing of such discovery, including whether the discovery will be conducted informally or formally.  The deadlines in the discovery plan must be mutually

agreeable, with a view to achieve resolution of the case with a minimum of expense and delay.

7.  **Joint Status Report.**  A status report must be filed within the time frames specified

within LBR 7016-1(a)(2).   The Joint Status Report must contain the information set forth in

LBR 7016-1(a)(2), and a statement that the parties have completed the Rule 26(f) Meeting and

made the initial disclosures required by Rule 26(a)(1).  The Joint Status Report shall also serve as

the written report of the Rule 26(f) Meeting.  If Defendant(s) have not filed and served an answer

to the Complaint, a Unilateral Status report is due seven (7) days prior to the first status

conference hearing.

8.  **Status Conference/Rule 16(b) Scheduling Conference.**  At the Rule 16(b) Scheduling

Conference, the Court will review the discovery plan set forth in the Joint Status Report and set

appropriate deadlines.

Counsel representing any party in conjunction with the Rule 26(f) Meeting, Joint Status

Report, and Rule 16(b) Scheduling Conference must be authorized to bind the party on all

matters to be covered.

9.  **Default.**  If no response to the complaint is timely filed, plaintiff should request entry of

default by the clerk prior to the status conference date set forth in the summons. F.R.Civ.P.55(a).

Plaintiff may also request entry of a default judgment by filing and serving an appropriate

motion. F.R.Civ.P.55(b)(2).

10. **Sanctions.  Failure to comply with these instructions may subject the responsible**

**party and/or counsel to sanctions, which may include dismissal of the adversary**

**proceeding.  The failure of either party to cooperate in the preparation of timely filing of a**

**Joint Status Report or appear at the status conference may result in the imposition of**

**sanctions under LBR 7016-1(f) or (g).**

///

**11. Joint Pre-Trial Order.  Failure to timely file a Joint Pre-Trial order may subject the responsible party and/or counsel to sanctions, which may include dismissal of the adversary proceeding.  The failure of either party to cooperate in the preparation of timely filing of a Joint Pre-Trial Conference or appear at the Joint Pre-Trial Conference may result in the imposition of sanctions under LBR 7016-1(f) or (g).**

Honorable Scott C. Clarkson
United States Bankruptcy Judge

Baruch C. Cohen, Esq. (SBN 159455)
**LAW OFFICE OF BARUCH C. COHEN**
    A Professional Law Corporation
4929 Wilshire Boulevard, Suite 940
Los Angeles, California 90010
(323) 937-4501        Fax (888) 316-6107
e-mail: baruchcohen@baruchcohenesq.com

Attorneys For Plaintiffs OC WEST, LLC, a Montana Limited Liability Company; LIBERTY
FINANCIAL USA, LLC, a Delaware Limited Liability Company; and LIBERTY DEBT
SOLUTION, LLC, a Nevada Limited Liability Company

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SANTA ANA DIVISION

| | |
|---|---|
| In re | Case No. 8:19-bk-10153-SC |
| THOMAS JOSEPH LYNCH, | Adversary # _____ |
| Debtor | Chapter 7 |
| | Assigned to the Honorable Scott C. Clarkson |
| OC WEST, LLC, a Montana Limited Liability Company; LIBERTY FINANCIAL USA, LLC, a Delaware Limited Liability Company; and LIBERTY DEBT SOLUTION, LLC, a Nevada Limited Liability Company, | **COMPLAINT FOR:** |
| | **NONDISCHARGEABILITY OF DEBT PURSUANT TO:** |
| Plaintiffs | • **11 U.S.C. § 523(a)(2)(A);**<br>• **11 U.S.C. § 523(a)(2)(B);**<br>• **11 U.S.C. § 523(a)(4);**<br>• **11 U.S.C. § 523(a)(6); and** |
| vs. | **DENIAL OF DISCHARGE PURSUANT TO:** |
| THOMAS JOSEPH LYNCH, | • **11 U.S.C. § 727(a)(2)(A);**<br>• **11 U.S.C. § 727(a)(2)(B);**<br>• **11 U.S.C. § 727(a)(3);** |
| Defendant | • **11 U.S.C. § 727(a)(4)(A);**<br>• **11 U.S.C. § 727(a)(4)(D);**<br>• **11 U.S.C. § 727(a)(5);**<br>• **11 U.S.C. § 727(a)(12)(B); and** |
| | **UNFAIR, UNLAWFUL AND FRAUDULENT BUSINESS PRACTICE CAL. BUS. & PROF. CODE § 17200 ET SEQ.** |

4/17-1:34pm

1  **TO THE HONORABLE JUDGE SCOTT C. CLARKSON, THOMAS JOSEPH LYNCH,**

2  **AND HIS ATTORNEY OF RECORD**:

3      Plaintiffs OC WEST, LLC, a Montana Limited Liability Company; LIBERTY

4  FINANCIAL USA, LLC, a Delaware Limited Liability Company; and LIBERTY DEBT

5  SOLUTION, LLC, a Nevada Limited Liability Company(hereinafter, "Plaintiffs"), creditors and

6  parties in interest in the above-referenced bankruptcy proceeding, files this Complaint to

7  Determine Nondischargeability of Debt under 11 U.S.C. § 523(a)(2)(A), 11 U.S.C. § 523(a)(2)(B),

8  11 U.S.C. § 523(a)(4), & 11 U.S.C. § 523(a)(6), Unfair, Unlawful and Fraudulent Business

9  Practice Cal. Bus. & Prof. Code § 17200, et seq. & Denial of Defendants' Discharge pursuant to

10  11 U.S.C. § 727(a)(2)(A), 11 U.S.C. § 727(a)(2)(B), 11 U.S.C. § 727(a)(3), 11 U.S.C.

11  §727(a)(4)(A), 11 U.S.C. §727(a)(4)(D), 11 U.S.C. §727(a)(5), and 11 U.S.C. § 727(a)(12)(B) (the

12  "Complaint") against Debtor/Defendant THOMAS JOSEPH LYNCH (hereinafter, "Defendant"),

13  and in support thereof respectfully represents to the Court as follows:

14                                                  **JURISDICTION & PARTIES**

15  1.    Jurisdiction is proper under 28 U.S.C. § 1334. Venue is proper pursuant to 28 U.S.C. §

16      1409(a). This Court has jurisdiction over the subject matter of this Complaint as a core

17      proceeding pursuant to the provisions of 28 U.S.C. §§ 1334 and 157(b)(2)(I), 11 U.S.C. §

18      523(a)(2)(A), 11 U.S.C. § 523(a)(2)(B), 11 U.S.C. § 523(a)(4), 11 U.S.C. § 523(a)(6), 11

19      U.S.C. § 727(a)(2)(A), 11 U.S.C. § 727(a)(2)(B), 11 U.S.C. § 727(a)(3), 11 U.S.C.

20      §727(a)(4)(A), 11 U.S.C. §727(a)(4)(D), 11 U.S.C. §727(a)(5), and 11 U.S.C. §

21      727(a)(12)(B) since this is a proceeding to determine the nondischargeability of a particular

22      debt, and is related to the Chapter 7 bankruptcy case of Debtor/Defendant THOMAS

23      JOSEPH LYNCH (the "Debtor") 8:19-bk-10153-SC, which is currently pending before

24      this Court in the Central District of California, Santa Ana courthouse.[1]

25

26      [1] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy

27  Code, 11 U.S.C. § 101-1330 and the Federal Rules of Bankruptcy Procedure, Rules 1001-9036.

28

2. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (J) and/or (O).

3. To the extent this dispute involves any non-core matters, and/or matters in which a bankruptcy judge may not enter final judgment without the parties consent, Plaintiffs consents to the entry of final judgment by the Court.

4. The Debtor may be served, pursuant to Fed. R. Bankr. P. 7004(b)(1), by mailing a copy of the Summons and Complaint to Debtor's counsel of record at Patrick O'Kennedy 500 North State College Blvd Suite 1100 Orange CA 92868, P: 714-919-1855, Fax: 714-362-3132 Email: okennedylaw@gmail.com, and to the Debtor at Thomas Lynch at 6787 Findley Circle, Huntington Beach CA 92648, which address constitutes either the Debtor's dwelling house or usual place of abode or the place at which the Debtor regularly conducts a business or profession.

5. Plaintiff OC WEST, LLC, is a Montana Limited Liability Company.

6. Plaintiff LIBERTY FINANCIAL USA, LLC, is a Delaware Limited Liability Company.

7. Plaintiff LIBERTY DEBT SOLUTION, LLC, is a Nevada Limited Liability Company.

8. Defendant THOMAS JOSEPH LYNCH ("Lynch" or "Defendant") is an individual residing in Huntington Beach, California and is an owner and principal of **APHEX PROCESSING CENTER, INC**., a Wyoming Corporation registered to conduct business in California ("Aphex"); **BRIDGELINK INSURANCE AND FINANCIAL SERVICES, INC**., a California Corporation ("Bridgelink"); **BROCATO ENTERPRISES, INC**., a California Corporation ("Brocato"); **CAFÉ DE LA MONTANA, LLC**, a California Limited Liability Company ("Café"); **COLOMBIA DIRECT GROUP S.A.S., A COLOMBIAN CORPORATION** ("CDG"); **COLOMBIA DIRECT GROUP, LLC**, a company of unknown legal standing ("CDG LLC"); **CONSUMER AFFAIRS LAW CENTER, INC**. a California Corporation ("CALC"); **CONSUMER AFFAIRS PROCESSING CENTER, INC**., a California Corporation ("CAPC"); **FINANCIAL SOLUTIONS, INC**., a Florida Corporation ("FS");

**FINANCIAL SOLUTIONS SERVICE CENTER, LLC**, a California Limited Liability Company ("FSSC"); **FINANCIAL SOLUTIONS CONSUMER CENTER, LLC**, a company of unknown legal standing ("FSCC"); **LEGAL CONSUMER CREDIT INSTITUTE, LLC**, a California Limited Liability Company ("LCCI"); **LEGAL SERVICES SUPPORT GROUP, LLC**, a Nevada Limited Liability Company ("LSSG"); **LIBERTY FINANCIAL USA, LLC**, a California Limited Liability Company ("Liberty CA"), **LYNCH FINANCIAL SOLUTIONS, INC**., a Florida Corporation ("Lynch FS"); **PHOENIX FINANCIAL SOLUTIONS, LLC**, a California Limited Liability Company ("Phoenix"), and **WYNN AND LYNCH HOLDINGS, LLC**, a California Limited Liability Company ("Lynch Holdings") companies that all relevant times had its principal place of business in and has engaged in business in Orange County, California.

9.   Upon information and belief, Plaintiffs allege that, at all relevant times, there existed a unity of interest and ownership between Aphex, Bridgelink, Brocato, Café, CDG, CDG LLC, CALC, FS, FSSC, LCCI, LSSG, Liberty CA, Lynch FS, Phoenix, and Lynch Holdings on the one hand (collectively "Lynch Entities"), and the Defendant on the other, such that any individuality and separateness between them has ceased. The Lynch Entities are a mere shell through which the Debtor carried on business and exercised complete control of the Lynch Entities so that any individuality and separateness of the Lynch Entities on the one hand, and the Defendant on the other, has ceased. Plaintiffs therefore contend that the Lynch Entities were operated by and for the benefit of the Defendant as his alter ego and that, in the interest of justice, any alleged corporate form of the Lynch Entities should be disregarded and the Lynch Entities' obligations and assets be treated as obligations and assets of the Defendant. Defendant, with the assistance of counsel, filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code on 1-15-2019.

## FACTUAL ALLEGATIONS AGAINST DEFENDANT

10.    Defendant, who also goes by the undisclosed aliases **THOMAS J. HUMPHREYS, TOM LYNCH JR, THOMAS J. LYNCH, THOMAS J. LYNCH JR, THOMAS J. LYNNCH, TOM BRADLEY, THOMAS BRADLEY,** and **CHERYL SCOTT**, is a serial contract breacher and fraudster whose *modus operandi* is to solicit investments from parties like Plaintiffs with no intention of ever honoring those deals, breaching contracts and stealing through conspiracy and fraud. The Defendant is bankrupt financially and morally.

### DEFENDANT'S FRAUDULENT SCHEME TO INVEST IN A COFFEE BUSINESS

11.    For background purposes, Defendant attempted numerous times to get Plaintiffs to invest in Defendant's coffee business. In furtherance of this scheme, and at all times relevant, Defendant represented that he was a successful businessman and owner of several domestic and international companies related to the debt settlement industry and coffee industry, among other things.

12.    Regarding coffee, in order to try to induce Plaintiffs into entering into a deal with him, he represented that he was, among other things:

   a.    owner and Chief Operating Officer of CDG and CDG LLC, with headquarters in Orange County, California and Medellin, Columbia and one of the oldest coffee growing families in Colombia for over 120 years and whose father was President of the Colombian Coffee Federation (FNC) of Antioquia and whose Grandfather was the President of the Senate of the Republic of Colombia;

   b.    owner and Chief Operating Officer of Café, an international coffee wholesaler responsible for selling containers of coffee valued at millions of dollars to Royal Coffee in San Francisco CA one of the nations largest coffee distributors and just one of the many distributors Defendant conducted business with; &

   c.    owned equipment valued at millions of dollars including a "cutting-edge 5-tier UV

1  protected Drying Canopy, Wet Mill, Dry Mill, family coffee farms located in

2  "coffee central" shipping out containers of coffee daily, and property owned outside

3  of Medellin including a "house close to the airport that sits on top of a mountain

4  with a wonderful view overlooking a big plain referred to as the Beverly Hills of

5  Colombia."

6  13.  Although Plaintiffs declined to invest in Defendant's purported coffee empire, Defendant

7  continued to send unsolicited emails for years boasting about his successes in the coffee

8  business, the millions of dollars of containers he was wholesaling to Royal Coffee and

9  others, all while piggybacking his family's 120-year history in the business. Although

10  Plaintiffs are still trying to ascertain what assets he actually owns under his name or any

11  entity he is affiliated with in Colombia subject to his bankruptcy petition and divorce

12  proceeding, what is confirmed is that Defendant never conducted any business with Royal

13  Coffee, not then or ever. Even the pictures of him and his wife on horseback he personally

14  provided to Plaintiff were taken during a family vacation and tour of another company's

15  coffee plantation that he was fraudulently representing for years was his.

16  **DEFENDANT'S FRAUDULENT SCHEME TO INVEST IN A DEBT RELIEF BUSINESS**

17  14.  Beginning on November 28, 2016, in order to induce Plaintiffs to invest in his debt relief

18  business, Defendant sent Plaintiffs his professional CV which made various

19  representations about his debt relief and consumer protection experience and business

20  acumen, with immaculate credit, claiming that Defendant was an instrumental player,

21  owner, Chief Executive Officer, Chief Operating Officer, Executive Director, President,

22  and/or Vice-President of the following successful debt relief businesses:

23  a.  **HOMELAND FINANCIAL SERVICES, INC**., involved in the start-up and

24  day-to-day operations of the original and largest debt relief company in the nation;

25  b.  **LEGAL HELPERS DEBT RESOLUTION, LLC** ("LHDR") developing the

26  "largest debt resolution and consumer protection company in the nation with over

27

28

4/17-1:34pm                                    -6-

300 attorneys" surpassing his previous company;

    c.    **LYNCH FINANCIAL SOLUTIONS, INC**. which is the manager and member of LSSG among other Lynch Entities, developing a marketing/sales strategy referring 3,600 new clients per month generating $260M of revenue and proudly boasting that he personally negotiated over $1 Billion of debt for individuals and businesses;

    d.    **CONSUMER ADVICE CENTER, INC**. serving as President;

    e.    **CONSUMER AFFAIRS LAW CENTER, INC**. serving as Chief Executive Officer;

    f.    **APHEX PROCESSING CENTER, INC**., serving as President and Chief Financial Officer;

    g.    **BROCATO ENTERPRISES, INC**., serving as Chief Operating Officer;

    h.    **MY TRUE CLOUD**, serving as Vice-President.

15.    Defendant re-affirmed these representations by sending an updated version of his CV to Plaintiffs on January 11, 2018.

16.    However, unknown to Plaintiffs at the time, Defendant conveniently never once disclosed that almost every single company Defendant was involved in faced civil and criminal charges for defrauding consumers in the same way he has done with Plaintiffs, including, but not An limited to:

    a.    An enforcement action filed by the Illinois Attorney General's office against Defendant on March 2, 2011 in the State of Illinois Circuit Court of the Seventh Judicial Circuit, Sangamon County, *The People of the State of Illinois vs. Legal Helpers Debt Resolution, LLC, et al.,* Case No.: 2011CH00286 in which Defendant ultimately agreed to cease soliciting and enrolling consumers in debt settlement and in which he paid $2.1 million in partial restitution to Illinois consumers and $150,000 to the State of Illinois;

    b.    A class action civil suit against several Lynch Entities in the Superior Court of New

1    Jersey, *Dawn Guidotti vs. Lynch Financial Solutions, Inc. et. al.*, Docket No.:

2    BUR-L-338-11, citing an unlawful plan or scheme is in violation of the New Jersey

3    Debt Adjustment and Credit Counseling Act, N.J.S.A. 17:16G-1, et seq. since these

4    services are performed by for profit entities or persons not permitted to operate

5    such business in New Jersey under the Act. Such debt adjustment activity further

6    constitutes the unauthorized practice of law in the State of New Jersey. Both

7    violations constitute crimes under New Jersey law and are in violation of the New

8    Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, et seq., the New Jersey Racketeer

9    Influenced and Corrupt Organizations Act, N.J.S.A. 2C:41-1, et seq., and other

10   State laws;

11   c.   Named as a defendant by a Chapter 7 Trustee in an Adversary Proceeding in United

12       States Bankruptcy Court, Southern District of California, *In re: Steven Laird*

13       *Shipley*, Case No.: 12-14621-LT7, Debtor Complaint for Avoidance and Recovery

14       of Preferential Transfer and Fraudulent Relief;

15   d.   Named as a defendant in an Adversary Proceeding in United States Bankruptcy

16       Court, Central District of California, *In re: Melanie Barry*, Case No.12-50383;

17   e.   Named as a defendant in a Chapter 13 Adversary Proceeding in United States

18       Bankruptcy Court, Easter District of North Carolina, Raleigh Division, *In re: Julie*

19       *Bell*, Case No.: 09-09375-8-JRL, seeking to avoid pre-petition transfer of property

20       and for damages arising out of the restrictions imposed on debt relief agents under

21       section 526 of the Bankruptcy Code, and for damages and violations of the North

22       Carolina Unfair and Deceptive Trade Practices Act;

23   f.   Named as a defendant in complaint with the Office of Consumer Affairs (OCA) in

24       the Commonwealth of Virginia, Department of Agriculture and Consumer

25       Services, *In re: Roijo E. Ellis*, Case No.: 907218, for fraud among other criminal

26       and civil causes of action;

27

28

4/17-1:34pm

g.      Named as a Defendant in Mansfield Municipal Court, Mansfield, Ohio, Case No.: 2016-CVF-02393 and Chapter 13 Bankruptcy Petition in the Western District of Oklahoma, *In re: Alan P. Gibson*, Case No.: 19-10024;

h.      Named as a defendant by a Chapter 7 Trustee Albert A. Riederer in an Adversary Proceeding in the United States Bankruptcy Court, District of Kansas, Kansas City Division, *In: re: Brooke Corporation, et al.*, Case No.: 08-22786-DLS, pursuant to recovery of monies under 11 U.S.C. § 548 and K.S.A. § 33-205 in which United States Bankruptcy Judge Dale L. Somers Granted an Order For Default Judgment against Defendant in the amount of $13,124.42;

17.     Beginning in 2013 and continuing throughout 2017, in furtherance of his unrelenting efforts to induce Plaintiffs to invest in his debt relief business, Defendant continually represented that he owned a custom Customer Relationship Management ("CRM") hardware system as one of his valuable assets that he spent "approximately $1M on" and software system that he spent another $1M "creating." He represented to Plaintiffs that he owned a list of hardware, servers, and phone systems which operated the ISO 27001 highest type of security available and that it had other modules in addition to debt settlement that he also represented he spent another $500,000.00 developing. (He bragged about the $1M CRM and $500K extra he "spent" building the ISO 27001 hardware, servers, phone, etc.). He further represented to Plaintiffs that "other CRMs available in the industry such as National Data Systems (NDS), Lead Trac, DebtPayPro, Prime Debt Soft, and Credit Soft "merely make orange juice where my CRM makes the entire breakfast." He also provided Plaintiffs with a letter verifying his ownership of the software and source code without any liens, and that Defendant owned them free and clear individually and under his company Consumer Affair Processing Center. However, unknown to Plaintiffs at the time, said representations were all false.

18.     In reliance of Defendant's representations, on December 12, 2016, Plaintiff OC West

1    entered into a Patent and Technology Perpetual License Agreement ("CRM Agreement")

2    with Defendant, Lynch FS, and FSSC whereby Plaintiff was to receive the source code for

3    this One Million Dollar ($1,000,000) CRM system including "worldwide, royalty-free,

4    right and license" in exchange for money acknowledged received by Defendant.

5    19.    Per the terms of the CRM Agreement, and based on his representations that Defendant

6        owned the above rights and assets, Defendant promised (yet failed) to:

7        a.    Grant Plaintiff a "royalty-free, perpetual, non-exclusive assignable, sub-licensable

8            right and license to that certain CRM;"

9        b.    Provide Plaintiff with the source code version of the CRM valued at over

10            $1,000,000.00 and related documentation including: list of all open source software

11            components utilized, list of third party software utilized, CRM documentation fixed

12            used to install and maintain the source code on any computer, and will update it all

13            not less than an annual basis to reflect changes and additions reflecting

14            modifications, upgrades, and improvements; &

15        c.    Give the source code materials to Plaintiff to internally use, modify, enhance,

16            improve, and copy for itself, its affiliates, and its subcontractors) worldwide,

17            among other things.

18    20.    Defendant breached terms of the CRM Agreement even before the ink was dry and to date

19        Plaintiff still has never received what it supposedly purchased. It was clear, that at the time

20        Defendant promised to perform the December 12, 2016 CRM Agreement, he had no

21        intention of ever performing.

22    21.    Furthermore, during Defendant's 341 exam conducted on April 3, 2019 by US Trustee

23        Karen Naylor, Defendant testified under oath, and revealed, that in fact the CRM was

24        "non-operational" and that it would cost "a lot of money" and in excess of "$10,000.00 for

25        hardware to get it operational and in excess of $80,000.00 to pay programers just to

26        program it."

27

28

4/17-1:34pm                                    -10-

22.     On or about April 11, 2017, Defendant and FSSC executed loan agreements with Jon Paul Sanchez ("JP") and Jesse Cavett ("Jesse") representing and warrantying in writing that:

    a.     JP and Jesse are given a security interest and collateral in the form of "100% of the assets and property of FSSC now owned, after acquired or derived, including but not limited to all receivables, all assets all fixtures, all software, all hardware and all intellectual property owned by FSSC;"

    b.     that Defendant and FSSC are prohibited from issuing, selling, or diluting FSSC in any way; and

    c.     as of the signing of the JP and Jesse loan agreements, JP owns 140,000 membership interests in FSSC and Jesse owns 90,000 membership interests.

23.     In furtherance of the loan agreements with JP and Jesse, Defendant and FSSC agreed in writing to the issuance of a UCC-1 Lien to perfect this security which was filed with the California Secretary of State on June 16, 2017, Filing Number: 17-7590904547. Within months, as usual, the Jesse and JP agreements were breached by Defendant and FSSC for failure to pay, and fraud in which all rights, title and interest were ultimately assigned to Plaintiff OC West.

24.     Then, in furtherance of the on-going fraud perpetrated by Defendant, just a few months later on August 17, 2017, Defendant and FSSC executed written agreements with Plaintiff OC West outlining the development and operation of a debt settlement business utilizing Plaintiffs' capital and Defendant's experience called Liberty Debt Solution, LLC. These documents consisted of a Partnership Agreement and other Secured Loan Documents in order to document Plaintiffs' investment, consisting of a Convertible Promissory Note ("Note"), Security Agreement ("Security Agreement"), Pledge Agreement ("Pledge Agreement"), Guaranty Agreement ("Guaranty Agreement"), and Assignment Agreement ("Assignment") all personally executed, initialed on each page, and guaranteed by Defendant (collectively the "Loan Agreements").

25.   Defendant represented in the Loan Agreements that: "Thomas Lynch is the owner and operator of FSSC and shall be employed as a 1099 Independent Contractor with Liberty" and that Plaintiff "will be investing money into Liberty and Lynch shall be personally guaranteeing said amounts." The Loan Agreements executed and initialed on each page by Defendant provided for a First Secured priority interest and lien in Defendant individually and all of FSSC's assets, payment proceeds, goods, inventory, rights and clients, among other things, however as pled herein. A UCC-1 Financing Statement was filed with the California Secretary of State against Defendant and Lynch Entities on February 1, 2018, Filing Number: 18-7631643726.

26.   Defendant further represented in the Loan Agreements (a Non-Competition provision) stating: "Lynch shall not, directly or indirectly, individually or with any other person or entity(ies): negotiate, consummate, contact directly or engage in any business in direct competition with Liberty as a debt settlement company or other services Liberty offers; attempt to bypass, interfere with, avoid ("Circumvent"), or permit to cause any affiliates to Circumvent or interfere with any relationship of Liberty" among other obligations that were breached within weeks of signing.

27.   Most importantly, the Loan Agreements specifically provided for a Liquidated Damages provision for violation of any section of the Agreement clearly stating: "Therefore as allowed under Nevada Law, Lynch hereby agrees that Liberty shall be entitled to Liquidated Damages, and not a penalty, of no less than Five Million Dollars ($5,000,000.00)."

28.   Through the execution of a separate Assignment Agreement as part of the Loan Agreements, Plaintiff was to own all membership interest in FSSC, or any related entity acquired by Defendant thereafter including Phoenix, and including, but not limited to: all proceeds from any assets, payment proceeds, rights, inventory, goods, accounts receivable, and client funds, stating: a) "Assigns all rights, title and interests, including membership

1     interests, in FSSC and all subsequently acquired interests in this or related entities": b)

2     "This Assignment is intended to convey to Assignee all rights, title and interest"; c) "rights

3     as a member to vote and participate in the management of the business, property, and

4     affairs"; d) "exercise all rights of a member without restriction"; and e) "will not give, sell,

5     assign, transfer, or in any way or manner pledge, hypothecate, encumber, use as collateral,

6     or give or permit a lein <sic> which will or might conflict or impair the rights herein

7     granted."

8    29.    The Loan Agreements executed by Defendant in favor of Plaintiff were a complete fraud,

9       enticing Plaintiff to loan Defendant and invest in excess of $500,000.00.00 and directly

10      contradicting the Jesse and JP Agreements he executed just four (4) months prior in which

11      he represented to Plaintiff that:

12      a.     Defendant is the 100% owner of all membership interests in FSSC (he was not);

13      b.     Defendant and FSSC grant a first priority security interest and lien in FSSC to

14         Plaintiff which was already granted;

15      c.     Defendant owns all interests in FSSC free and clear of all liens, claims, and

16         encumbrances which was a lie subject to the Jesse and JP Agreements; and

17      d.     Defendant is assigning through the Assignment all rights, title and interest,

18         including membership interests, in FSSC and that they have not been sold or

19         assigned to any other party, which was also a lie subject to the Jesse and JP

20         Agreements. Defendant agreed in writing to $5 million liquidated damages

21         provision for breach of any provision of the Loan Agreements.

22    30.    The Loan Agreements further provided for an Indemnity Provision and Attorneys' and

23      other Fees and Costs Guaranty, in which Defendant individually and along with FSSC

24      agreed to "indemnify and hold [Plaintiffs] Liberty Debt and OC West and their owners,

25      manager, employees, and other affiliates, harmless from and against any and all liabilities,

26      losses, damages, claims, cost, and expenses of any kind whatsoever relating to or arising

27

28

1    directly or indirectly out of consequential damages, legal fees, and other costs and

2    expenses defending claims or controversies." Additionally, Defendant individually and on

3    behalf of FSSC promised to "pay all costs, expenses, and attorney's fees incurred by

4    Liberty or OC West in the defense of any civil matters including civil suits" and regarding

5    the "operations of Liberty including probate, bankruptcy, or other proceeding" personally

6    guaranteeing and indemnifying Plaintiff Liberty Debt for the very business he would be

7    operating.

8    31.    In further perpetuation of Defendant's on-going fraud, this time against the State of

9    California Employment Development Department ("EDD"), Defendant filed for

10    Unemployment Benefits on April 2, 2018 and was promptly denied by the EDD due to his

11    Independent Contractor status that he agreed to in writing pursuant to § 623 CUIC and §

12    926 CUIC. Defendant, unrelenting on gaming the California unemployment system

13    through fraud, filed an appeal on May 2, 2018 with an entirely separate California

14    governmental agency, the California Unemployment Insurance Appeals Board, Orange

15    County Office of Appeals, Case No.: 6142165, in which an appeal was heard without any

16    notice, due process, or opportunity for Plaintiff to appear to oppose it. Defendant prevailed

17    on appeal without any objection by Plaintiff during the hearing and has received in excess

18    of $10,000.00 from the EDD as represented in his Chapter 7 Bankruptcy Petition and based

19    on the very acts he guaranteed to protect Plaintiff against since he was operating the

20    business and employing himself. Defendant is currently under criminal investigation by

21    several state and federal agencies in California related to this fraudulent EDD matter.

22    32.    As a *coup de grâce* related to his wage status and further fraud on the California

23    unemployment system, on September 5, 2018, Defendant filed a lawsuit in the Superior

24    Court of California, County of Orange entitled *Thomas Lynch vs. Liberty Debt Solution,*

25    *LLC and Brian Roche*, Case No: 30-2018-01016550-CU-OE-CJC ("Wage Complaint") for

26    various causes of action relating to his purported employment from August 11, 2017 -

27

28

1    January 15, 2018 citing misclassification as a 1099 worker instead of a W2, failure to pay

2    wages, overtime, breaks, and other causes of action again for the very business he was

3    supposed to be operating and the very type of civil labor claim he indemnified Plaintiffs

4    from under the Loan Agreements.

5    33.    On October 2, 2017 less than three (3) weeks into the launch of Plaintiffs' business, the

6    business he was supposed to be operating, Defendant suffered a heart attack and underwent

7    open heart surgery. He was unable to return to return to work per his doctor's orders yet

8    still filed the Wage Complaint stating that he "worked at least 10 hours a day, Monday

9    through Friday (and sometimes on Saturday) six days a week between August 11, 2017-

10    January 15, 2018" and wasn't provided proper meal periods and rest periods. Defendant

11    made these judicial admissions despite being in the hospital from October 2, 2017 on,

12    during this relevant period, under the knife for open heart surgery for which he could not

13    possibly have worked any hours in any day, and despite the fact that he was supposed to be

14    running Plaintiffs' business and overseeing himself. All despite his agreement throughout

15    the Loan Agreements that he is only a "1099 Independent Contractor" for which he

16    received a 1099 from Plaintiff for 2017. Plaintiff has now been forced to hire the services

17    of an Employment Attorney and to re-open the case on Appeal costing Plaintiff thousands

18    of dollars in legal fees and further exposing Plaintiff to tens of thousands of dollars in

19    damages to the State of California despite Defendant agreeing in writing to indemnify

20    Plaintiff against just that.

21    34.    On or around December 15, 2017, after being released from the hospital, Defendant

22    approached Plaintiffs' representative Brian Roche ("Roche") in tears begging to borrow

23    money in order to pay for a purported root canal and that he was in "excruciating pain."

24    Roche, a successful businessman, philanthropist, and 7-year ex-NFL football player with

25    the San Diego Chargers, Kansas City Chiefs, and Dallas Cowboys gave him $2,000.00 in

26    cash, out of the kindness of his heart, as a loan on behalf of Plaintiffs to help him have the

27

28

1    root canal obtaining money from Roche under false pretenses and false representations.

2    Defendant took that money and the very next day, knowing that Plaintiffs' other company

3    Liberty USA had a seasoned history of being in business for over 16 years, formed Liberty

4    Financial USA, LLC in California on December 18, 2017 using his "root canal" money to

5    pay for it in order to fraudulently operate under the same name - in blatant violation of the

6    Non-Compete Agreement.

7    35.    The same day, December 18, 2017 , again using his "root canal" money, Defendant also

8           formed Phoenix Financial Solutions, LLC in California with the sole purpose of copying

9           Plaintiff and its business and in direct violation of the Non-Competition provisions of the

10          Agreements with "Liquidated Damages, and not a penalty, of no less than Five Million

11          Dollars ($5,000,000.00)." Defendant maliciously created URLs for both entities including

12          www.libertyfinancialusallc.com that mimic and are identical to Plaintiff Liberty USA's

13          website (www.libertyfinancialusa.com) in order to further perpetuate his fraud.

14   36.    This fraudulent scheme of operating FSSC, Phoenix, and Liberty CA was in direct

15          violation of the Non-Compete provision of the Loan Agreements and was specifically done

16          in order to defraud Plaintiffs. Defendant even executed a Partnership Agreement for

17          Phoenix outlining the partnership, contributions, ownership interest, roles, responsibilities

18          of each, circulated among them in December, 2017, and listing Defendant's ownership

19          interest as 28% in which he would serve as "President and Manager" among other job

20          responsibilities again in direct violation of the Non-Compete provision of Plaintiffs' Loan

21          Agreements.

22   37.    Knowing no bounds and in furtherance of his civil and criminal fraud, Defendant then

23          obtained an Employment Identification Number for each entity, Liberty CA EIN: 47-

24          2430031 and Phoenix EIN: 82-3854036 and opened bank accounts for each entity at Wells

25          Fargo located at 19081 Goldenwest St, Huntington Beach, CA 92648 and Chase Bank

26          located at 19461 Main St Ste 102, Huntington Beach, CA 92648 none of which were even

27

28

1    listed any of the Defendant's petition filings.

2    38.    On or about January 10, 2018, Defendant emailed Kim Stratford at Secure Account Service

3    ("SAS"), Plaintiffs' payment processor, with the Subject line: "Updated Application

4    Documents for name Change to Liberty Financial USA" including a signature with the

5    name "Thomas Lynch" and stating if you "have any questions you may call me on my cell

6    at 714-321-6971." Later the same day, Defendant sent a second email to Kim Stratford at

7    SAS the subject line "Updated Banking Info for Liberty Financial USA" and included a

8    copy of the new Liberty Financial USA bank account that Defendant opened in his name as

9    signatory.

10    39.    On or about February 10, 2018 after over a month, Plaintiffs contacted SAS and inquired

11    about its clients fees that had not deposited into its bank accounts and was told that on

12    January 10, 2018, a month prior, Defendant had provided SAS with new banking

13    information for Plaintiffs' company and that the client fees were depositing into that

14    account of the same name. Plaintiffs had no idea Defendant had formed a new California

15    entity using his company name he has had since 2001 with the only purpose of being able

16    to embezzle funds. Defendant was not entitled to any client funds of Plaintiffs and was

17    merely a 1099 Independent Contractor and only by fraudulently impersonating Plaintiffs

18    was he able to convert Plaintiffs' client funds for his personal use by diverting and stealing

19    Plaintiffs' client funds by impersonating Plaintiff Liberty USA to Plaintiffs' processor

20    SAS.

21    40.    On or around January 29, 2018, when SAS tried to reverse the funds that were fraudulently

22    converted and embezzled, the account came back NSF and Defendant has been in

23    possession of those funds since. Defendant is now the subject of on-going criminal

24    investigation by several state and federal agencies in California and Arizona where SAS is

25    located related to this matter of stealing Plaintiffs' client fees through fraud, impersonation,

26    and other illegal means.

27

28

4/17-1:34pm

-17-

41.     On April 2, 2018 Plaintiff OC West filed a Complaint in the Superior Court of California, County of Orange, *OC West, LLC vs. Thomas J. Lynch*, Case No.: 30-2018-00983118-CU-CL-CJC for breach of contract related to the assigned JP and Jesse claims. A Motion to Compel and Answers Deemed Admitted All Facts Referenced Herein was granted by the Court in that action, and hearing for terminating sanctions scheduled against FSSC in May 2019 was stayed as to Defendant as a result of the Bankruptcy filing.

42.     On August 27, 2018, Liberty Debt filed a lawsuit in District Court of Clark County, Nevada against Defendant, FSSC, and Phoenix for fraud, conversion, and various other causes of action relating to the breach of the Loan Agreements and operating competing companies from his house in direct violation of the covenants not to compete, *Liberty Debt Solution, LLC vs. Thomas Joseph Lynch, et. al.*, Case No.: A-18-78005-C.

43.     At all times relevant, Defendant represented to Plaintiff he owned millions of dollars in assets, properties domestically and internationally in Colombia, flourishing businesses making millions of dollars a year, with perfect credit, all while offering to put up the titles to various automobiles he owned as security and collateral, including, but not limited to:

    a.     A "one of a kind" 1974 Porsche Carrera RSR IROC, VIN: 9114400309 ("Porsche") titled in his name and valued at over $100,000;

    b.     A 1981 Harley Davidson FLH, Police Special, VIN: 1HD1AAK188Y047910 titled in his name and valued at over $50,000.00;

    c.     A 2009 Cadillac Escalade Hybrid, VIN: 1GYFC43539R114710, titled in his name and valued at over $75,000, and d) 2010 Dodge Challenger 2 Door Custom Coup, VIN: 2B3CJDW5AH219133, titled in his name and valued at over $60,000, among other assets.

///

///

///

# FIRST CAUSE OF ACTION
## NONDISCHARGEABILITY OF DEBT TO PLAINTIFFS UNDER 11 U.S.C. § 523(a)(2)(A)
*(For money obtained by false pretenses, false representations, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition)*

44.   Plaintiffs repeat, reallege and embody herein by this reference paragraphs 1-43 above, as if fully set forth herein.

45.   Plaintiffs allege that the claims for relief arising from the actions and omissions of Defendant as set forth herein, are non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), in that they establish claims for money "obtained by false pretenses, false representations, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." Upon information and belief, such actions/omissions were undertaken in furtherance of a fraudulent financial scheme to defraud Plaintiffs.

46.   In inducing Plaintiff to enter into the CRM Agreement, Defendant represented to Plaintiffs that:

   a.   He owned a list of hardware, servers, phone systems which operates ISO 27001 (highest type of info security available);

   b.   He spent $1,000,000.00 on the hardware and $500,000 on the ISO 2700;

   c.   He had a custom CRM (with attorney portal) which he invested over $1,000,000.00 developing;

   d.   That other CRMs available in the industry such as National Data Systems (NDS) Lead Trac, DebtPayPro, Prime Debt Soft, and Credit Soft "merely make orange juice where my CRM makes the entire breakfast!";

   e.   That it is a valuable asset that he designed and currently owns that runs the whole company from the front-end to back-end then API to the payment processor;

   f.   That his CRM/ERP has a scheduler for the Face to Face ("F2F") and attorney portal for attorneys to access via the internet, extensive interaction by the attorneys, and an API linked to the F2F for efficiency in scheduling and building with

1          programmers on stand-by to set up; &

2      g.    His robust CRM/ERP has other modules in addition to debt settlement for auto

3          warranty, student loans, credit repair, and can be developed for tax debt and other

4          verticals.

5  47.   On December 12, 2016 Defendant made the following representation in the CRM

6      Agreement:

7      a.    Lynch Financial Solutions, Inc., FSSC, and Defendant ("Lynch Entities") hereby

8          grants Plaintiff a "royalty-free, perpetual, non-exclusive assignable, sub-licensable

9          right and license to that certain CRM" valued at over $1,000,000.00.

10     b.    Lynch Entities will provide Plaintiff with the source code version of the CRM

11         valued at over $1,000,000 and related documentation including: list of all open

12         source software components utilized, list of third party software utilized, CRM

13         documentation fixed used to install and maintain the source code on any computer,

14         and will update it all not less than an annual basis to reflect changes and additions

15         reflecting modifications, upgrades, and improvements.

16     c.    Lynch Entities will give the source code materials to Plaintiffs to internally use,

17         modify, enhance, improve, and copy for itself, its affiliates, and its subcontractors)

18         worldwide.

19  48.   As a result of Defendant's representations Plaintiffs subsequently paid Defendant under the

20      CRM Agreement and invested and loaned in excess of $500,000.00 pursuant to the written

21      Loan Agreements that is now lost.

22  49.   In inducing Plaintiffs to enter into the Loan Agreements, Defendant represented to

23      Plaintiffs that:

24     a.    He was considered one of the best in the industry and had been running debt

25         settlement companies since 2001 when he owned the Grandfather company,

26         Homeland Financial Services located in Irvine.

27

28

1   b.   He created the largest debt settlement company in the nation with over 300

2        attorneys called Legal Helpers Debt resolution (LHDR) referring 3,600 new clients

3        per month and drafting $800K per week income into his company.

4   c.   He had a wealth of assets, experience, and connections in the industry and

5        guaranteed to generate a significant amount of revenue.

6   d.   He had everything ready to go for a compliant turn-key national attorney debt

7        resolution model, contacts of attorneys in 46 states to use, and many attorneys who

8        are willing to work with us.

9   e.   Owned another asset called Consumer Advice Center www.getconsumeravice.com,

10       with an A+ BBB rating, operating for 5 years which can be used for marketing and

11       sales.

12  f.   Owned another asset called Financial Solutions Consumer Center operating for 10

13       years with an A+ BBB rating which can be used for marketing and sales.

14  g.   He had on retainer several of the top compliance attorneys for debt settlement in the

15       nation including Robby Birnbaum of Greenspoon Marder, LLP in Florida, Michael

16       Thurman, partner at Loeb & Loeb, LLP in Los Angeles, and Jean Noonan, partner

17       at Hudson & Cook, LLP in Washington D.C.

18  h.   He personally has successfully negotiated billions of dollars of consumer debt and

19       business debt.

20  i.   He had 45 active clients paying $116,127 of fees to FSSC over the next 10 months

21       as of July, 2017 that he was assigning to Plaintiff.

22  50.  On August 11, 2017 Defendant made the following representations in the Loan

23       Agreements:

24  a.   Defendant shall be hired by Liberty as a 1099 independent contractor for a period

25       of at least six (6) months at a rate of Four Thousand Dollars ($4,000) per month.

26  b.   Defendant shall not, directly or indirectly, individually or with any other person or

27

28

4/17-1:34pm

-21-

1       entity(ies): (a) negotiate, consummate, contact directly or engage in any business in

2       direct competition with Liberty as a debt settlement company, tax settlement

3       company, or any other services Liberty offers in the future as long as he is an equity

4       owner in Liberty or being paid any monies by Liberty as an employee or

5       independent contractor, (b) attempt to bypass, interfere with, avoid ("Circumvent"),

6       or permit or cause any affiliates to Circumvent or interfere with any relationship,

7       contractual or otherwise, between Liberty and any third parties.

8     c.    Defendant hereby agrees that Liberty and/or OC West shall be entitled to

9       Liquidated damages, and not a penalty, of no less than Five Million Dollars

10      ($5,000,000) of any breach by Defendant of any of the sections of this Agreement,

11      specifically the Non-Compete provisions.

12    d.    Defendant and FSSC shall indemnify and hold Liberty and OC West and their,

13      owners, managers, employees, and other affiliates, harmless from and against any

14      and all liabilities, losses, damages, claims, costs, and expenses of any kind

15      whatsoever relating to or arising directly or indirectly out of or by reason of any

16      such violation or breach, including, without limitation, consequential damages,

17      legal fees, and other costs and expenses of prosecuting or defending claims or

18      controversies, whether litigated or un-litigated, and interest on all such amounts.

19      Defendant and FSSC promises to pay all costs, expenses, and attorney's fees

20      incurred by Liberty or OC West in the defense of any civil or criminal matters from

21      Federal, State, or Local agencies, or any customers including civil suits filed by

22      customers of Liberty, regarding the legality, compliance, or operations of Liberty

23      and OC West, including any probate, bankruptcy, receivership, injunction,

24      arbitration, mediation, or other proceeding.

25    e.    Defendant and FSSC shall be liable to pay the total investment of $500,000 plus all

26      accrued interest, late charges, fees, costs, and expenses.

27

28

f.      Defendant pledges, grants, and assigns to OC West a first priority security interest in and lien upon all of the following property of FSSC and Defendant, whether now owned or hereafter acquired by FSSC and Defendant, whether now existing or hereafter arising, whether fixed or contingent, and wherever located, and all supporting obligations relating to said property, and all proceeds thereof (collectively, "Collateral"):

i.      all assets, furniture, fixtures, and equipment owned by the Business, including, but not limited to, computers, software, CRM, phone systems, servers, and racks.

ii.      Any payment proceeds, and rights under and related to Defendant's compensation as Managing Member of the Business and those certain clients of FSSC;

iii.      all goods of the Business, including, without limitation, machinery, equipment, furniture, furnishings, fixtures, signs, lights, tools, parts, supplies and motor vehicles of every kind and description, now or hereafter owned by the Business, or in which the Business may have or may hereafter acquire any interest, and all replacements, additions, accessions, substitutions and proceeds thereof, arising from the sale or disposition thereof, and where applicable, the proceeds of insurance and of any tort claims involving any of the foregoing;

iv.      all inventory of the Business including, but not limited to, all goods, wares, merchandise, parts, supplies, finished products, other tangible personal property, including such inventory as is temporarily out of the Business and Defendant's custody or possession and including any returns upon any accounts or other proceeds, including insurance proceeds, resulting from the sale or disposition of any of the foregoing;

1               v.          all contract rights and general intangibles of the Business, including,

2                      without limitation, goodwill, trademarks, trade styles, trade names,

3                      leasehold interests, partnership or joint venture interests, patents and patent

4                      applications, copyrights, source codes, object codes, and deposit accounts

5                      whether now owned or hereafter created;

6              vi.        all documents, warehouse receipts, instruments and chattel paper of the

7                      Business and Defendant whether now owned or hereafter created;

8             vii.      all accounts and other receivables, instruments or other forms of obligations

9                      and rights to payment of FSSC (herein collectively referred to as

10                    "Accounts"), together with the proceeds thereof, all goods represented by

11                    such Accounts and all such goods that may be returned by FSSC's

12                    customers, and all proceeds of any insurance thereon, and all guarantees,

13                    securities and liens which FSSC and Defendant may hold for the payment

14                    of any such Accounts including, without limitation, all rights of stoppage in

15                    transit, replevin and reclamation and as an unpaid vendor and/or lienor, all

16                    of which FSSC and Defendant represents and warrants will be bona fide and

17                    existing obligations of its respective customers, arising out of the sale of

18                    goods by FSSC and Defendant in the ordinary course of business;

19            viii.    to the extent assignable, all of FSSC and Defendant's rights under all

20                    present and future authorizations, permits, licenses and franchises issued or

21                    granted in connection with the operations of any of its facilities;

22             ix.       accounts, accounts receivable, chattel paper, deposit accounts, commercial

23                    tort claims, documents, equipment, fixtures, general intangibles; and

24             x.        all products, proceeds (including, without limitation, insurance proceeds),

25                    and rights of FSSC and Defendant to receive payments in respect of and

26                    from such interests and related rights, goods, instruments, inventory,

27

28

| | | |
|---|---|---|
| 1 | | investment property, rents, letters of credit, letter-of-credit rights, payment |
| 2 | | intangibles, money, and all books and records pertaining to the foregoing |
| 3 | | property and related rights from the above-described property. |
| 4 | g. | FSSC and Defendant warrant and represent that: 1) It has good and valid title to all |
| 5 | | of its property and assets, including the Collateral, free and clear of all liens, |
| 6 | | claims, charges, mortgages, pledges, security interests, restrictions or other |
| 7 | | encumbrances; 2) There is no claim, action, suit, proceeding, arbitration, complaint, |
| 8 | | charge or investigation pending or, to FSSC or Defendant's knowledge, currently |
| 9 | | threatened against or involving the Business or Defendant or any of FSSC or |
| 10 | | Defendant's assets or properties; 3) FSSC and Defendant are not a party and is not |
| 11 | | named as subject to the provisions of any order, writ, injunction, judgment or |
| 12 | | decree of any court or government agency or instrumentality. |
| 13 | h. | FSSC and Defendant promise to pay all costs, expenses and attorneys' fees incurred |
| 14 | | by OC West in the exercise of any remedy (with or without litigation), in any |
| 15 | | proceeding for the collection of this Note, or in any litigation or controversy arising |
| 16 | | from or connected with this Note. Such proceedings shall include, without |
| 17 | | limitation, any probate, bankruptcy, receivership, injunction, arbitration, mediation |
| 18 | | or other proceeding, or any appeal from or petition for review of any of the |
| 19 | | foregoing, in which OC West appears to enforce this Note. FSSC and Defendant |
| 20 | | shall also pay all of OC West's costs and attorneys' fees incurred in connection |
| 21 | | with any demand, workout, settlement, compromise or other activity in which OC |
| 22 | | West engages to collect any portion of this Note not paid when due or as a result of |
| 23 | | any default of FSSC and Defendant. |
| 24 | 51. | Defendant's representations were all false, including but not limited to: |
| 25 | a. | Defendant never provided Plaintiffs a royalty-free, perpetual, non-exclusive |
| 26 | | assignable, sub-licensable right and license or source code to the CRM. |
| 27 | | |
| 28 | | |

b.    The CRM is not a valuable asset, in fact not valuable at all since it does not run any company, does not make orange juice or breakfast, and is non-operational requiring hundreds of thousands of dollars just to make it operational per his testimony under oath during his 341 exam on April 3, 2019.

c.    Every single debt settlement business he represented he was a part of was either a lie and not involved at all, was sued civilly and criminally, and charged with criminal acts in almost every state he operated in.

d.    He personally never negotiated a single dollar of personal or consumer debt for any client but relied on negotiators he fraudulently employed through the years at his sham companies to do so.

e.    His 45 active clients paying $116,127.00 in fees he was assigning to Plaintiffs as security for the loan was really 4 clients paying no fees and all 4 of which cancelled or dropped out within months of this representation and are now victims that are willing participants in the multiple criminal investigations on-going in several states.

f.    Defendant was the one who proposed he be paid as a 1099 Independent Contractor and agreed as such through the Loan Agreements, and since he was operating the business was in charge of overseeing himself, yet filed the *Lynch v. Liberty* suit claiming wage violations, overtime, meal breaks, etc. for a business he was supervising himself.

g.    He agreed to indemnify and hold harmless Liberty from this very wage claim that he has brought which was a total lie.

h.    He agreed not to "engage in any business in direct competition with Liberty as a debt settlement company, tax settlement company, or any other services Liberty offers in the future, yet within days of initialing each page and executing these Loan Agreements he was operating FSSC from his house servicing those client and

4/17-1:34pm

-26-

1    signing up new ones.

2        i.     Within months he was forming Liberty CA and Phoenix and again initialing each

3              page and signing a Partnership Agreement with his Phoenix partners engaging in

4              business in direct competition with Liberty....”

5        j.     Opening bank account under Plaintiffs' name in order to divert, steal, convert,

6              embezzle Plaintiffs' client fees to his account through impersonation, fraud, and

7              theft.

8        k.     Agreed to indemnify and hold harmless and pay for any suit, expenses, etc., etc.,

9              etc. related to defending claims which he himself brought citing causes of action

10             that he was in charge of supervising himself on.

11       l.     Agreed to grant Plaintiffs first lien and secured interest on any clients and any

12             assets and fees, yet between January 2018 and the present has moved his clients

13             around to 4 different processors in an effort to hide fees and assets, including SAS,

14             RAM, EPPS, and GCS. He still has not provided the bank statements for all

15             accounts for which he is a signor whether those are for any companies listed or

16             others.

17   52.   On or around December 15, 2017, Defendant approached Plaintiffs' representative Roche

18         and got him to loan him $2,000.00 in cash on behalf of Plaintiffs to help him have the root

19         canal, obtaining money from Roche under false pretenses and false representations. .

20         Defendant, using his "root canal" money, formed Liberty Financial USA, LLC in

21         California on December 18, 2017 in order to fraudulently operate under the same name.

22   53.   The same day, December 18, 2017 , again using his "root canal" money, Defendant also

23         formed Phoenix Financial Solutions, LLC in California with the sole purpose of copying

24         Plaintiff and its business and in order to further perpetuate his fraud.

25   54.   Knowing no bounds and in furtherance of his civil and criminal fraud, Defendant then

26         obtained an Employment Identification Number for each entity, Liberty CA EIN: 47-

27

28

1    2430031 and Phoenix EIN: 82-3854036 and opened bank accounts for each entity at Wells

2    Fargo located at 19081 Goldenwest St, Huntington Beach CA 92648 and Chase Bank

3    located at 19461 Main St, Ste 102, Huntington Beach CA 92648.

4    55.    On or about January 10, 2018, Defendant emailed Kim Stratford at Secure Account Service

5    ("SAS"), Plaintiffs' payment processor, with the Subject line: "Updated Application

6    Documents for name Change to Liberty Financial USA" including a signature with the

7    name "Thomas Lynch" and stating if you "have any questions you may call me on my cell

8    at 714-321-6971." Later the same day, Defendant sent a second email to Kim Stratford at

9    SAS the subject line "Updated Banking Info for Liberty Financial USA" and included a

10    copy of the new Liberty Financial USA bank account that Defendant opened in his name as

11    signatory.

12    56.    On or about February 10, 2018 after over a month, Plaintiff contacted SAS and inquired

13    about its clients fees that had not deposited into its bank accounts and was told that on

14    January 10, 2018, a month prior, Defendant had provided SAS with new banking

15    information for Plaintiffs' company and that the client fees were depositing into that

16    account. Defendant was not entitled to any client funds of Plaintiff and was merely a 1099

17    Independent Contractor and only by fraudulently impersonating Plaintiff was he able to

18    convert Plaintiffs' client funds for his personal use by diverting and stealing Plaintiffs'

19    client funds by impersonating Plaintiff Liberty USA to Plaintiffs' processor SAS.

20    57.    On or around January 29, 2018, when SAS tried to reverse the funds that were fraudulently

21    converted and embezzled, the account came back NSF and Defendant has been in

22    possession of those funds since. Defendant is now the subject of on-going criminal

23    investigation by several state and federal agencies in California and Arizona where SAS is

24    located related to this matter of stealing Plaintiffs' client fees through fraud, impersonation,

25    and other means.

26    58.    As a result of Defendant's actions and omissions identified herein, he has received a

27

28

4/17-1:34pm

-28-

benefit from Plaintiffs in excess of $5,800,300.00, based upon false pretenses, false representations, and actual fraud, other than a statement respecting his or any insider's financial condition.

59.   As a result of such actions/omissions, Plaintiffs have accordingly been damaged by Defendant in an amount in excess of $5,800,300.00, plus interest, costs and attorneys' fees which continue to accrue.

60.   Accordingly, pursuant to 11 U.S.C. § 523(a)(2)(A), the above described claims for relief are non-dischargeable.

## SECOND CAUSE OF ACTION
### NONDISCHARGEABILITY OF DEBT TO PLAINTIFFS UNDER 11 U.S.C. § 523(a)(2)(B)

*(For money obtained by use of a statement in writing that is materially false, respecting the debtor's or non insider's financial condition, on which the creditor to whom the debtor is liable for such money, property, services or credit reasonably relied, and that the debtor caused to be made or published with the intent to deceive)*

61.   Plaintiffs repeat, reallege and embody herein by this reference paragraphs 1-60 above, as if fully set forth herein.

62.   11 U.S.C. § 523(a)(2)(B): use of a statement in writing—(I) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive;

63.   In inducing Plaintiff to enter into the CRM Agreement, Defendant represented to Plaintiff in writing (respecting his financial condition) that:

a.   He owned a list of hardware, servers, phone systems which operates ISO 27001 (highest type of info security available).

b.   He spent $1,000,000 on the hardware and $500,000 on the ISO 27001 and was a valuable asset of his that he would sell to Plaintiff and that could be used to operate Plaintiffs' business.

c.   He had a custom CRM (with attorney portal) which he invested over $1,000,000.00

1    developing.

2    d.    That other CRMs available in the industry such as National Data Systems (NDS)

3    Lead Trac, DebtPayPro, Prime Debt Soft, and Credit Soft "merely make orange

4    juice where my CRM makes the entire breakfast!"

5    e.    That it is a valuable asset that he designed and currently owns that runs the whole

6    company from the front-end to back-end then API to the payment processor.

7    f.    That his CRM/ERP has a scheduler for the Face to Face ("F2F") and attorney portal

8    for attorneys to access via the internet, extensive interaction by the attorneys, and

9    an API linked to the F2F for efficiency in scheduling and building with

10    programmers on stand-by to set up.

11    g.    His robust CRM/ERP has other modules in addition to debt settlement for auto

12    warranty, student loans, credit repair, and can be developed for tax debt and other

13    verticals.

14    64.    In inducing Plaintiff to enter into the Loan Agreements, Defendant represented to Plaintiff

15    in writing (respecting his financial condition) that:

16    a.    He was considered one of the best in the industry and had been running debt

17    settlement companies since 2001 when he owned the Grandfather company,

18    Homeland Financial Services located in Irvine.

19    b.    He created the largest debt settlement company in the nation with over 300

20    attorneys called Legal Helpers Debt resolution (LHDR) referring 3,600 new clients

21    per month and drafting $800K per week income into his company.

22    c.    He had a wealth of assets, experience, and connections in the industry and

23    guaranteed to generate a significant amount of revenue.

24    d.    He had everything ready to go for a compliant turn-key national attorney debt

25    resolution model, contacts of attorneys in 46 states to use, and many attorneys who

26    are willing to work with us.

27

28

4/17-1:34pm

-30-

e.  Owned another asset called Consumer Advice Center www.getconsumeravice.com with an A+ rating with the BBB, operating for 5 years, which can be used for marketing and sales.

f.  Owned another asset called Financial Solutions Consumer Center operating for 10 years with an A+ rating with the BBB which can used for marketing and sales.

g.  He had on retainer several of the top compliance attorneys for debt settlement in the nation including Robby Birnbaum, Michael Thurman, and Jean Noonan.

h.  He personally has successfully negotiated billions of dollars of consumer debt and business debt.

i.  He had 45 active clients paying $116,127 of fees to FSSC over the next 10 months as of July 2017 that he was assigning to Plaintiff

65.  Defendant's representations were false and were all statements made by him in writing, including but not limited to:

a.  Defendant never provided Plaintiff a royalty-free, perpetual, non-exclusive assignable, sub-licensable right and license or source code to the CRM on which Plaintiff relied.

b.  The CRM is not a valuable asset, in fact not valuable at all since it does not run any company, does not make orange juice or breakfast, and is non-operational requiring hundreds of thousands of dollars just to make it operational per his testimony under oath during his 341 exam on April 3, 2019 on which Plaintiff relied.

c.  Every single debt settlement business he represented he was a part of was either a lie and not involved at all, was sued civilly and criminally, and charged with criminal acts in almost every state he operated in.

d.  He personally never negotiated a single dollar of personal or consumer debt for any client but relied on negotiators he fraudulently employed through the years at his sham companies to do so.

e.     His 45 active clients paying $116,127.00 in fees he was assigning to Plaintiffs as security for the loan was really 4 clients paying no fees and all 4 of which cancelled or dropped out within months of this representation and are now victims that are willing participants in the multiple criminal investigations on-going in several states.

f.     Defendant was the one who proposed he be paid as a 1099 Independent Contractor and agreed as such through the Loan Agreements, and since he was operating the business was in charge of overseeing himself, yet filed the *Lynch v. Liberty* suit claiming wage violations, overtime, meal breaks, etc. for a business he was supervising himself.

g.     He agreed to indemnify and hold harmless Liberty from this very wage claim that he has brought which was a total lie.

h.     He agreed not to "engage in any business in direct competition with Liberty as a debt settlement company, tax settlement company, or any other services Liberty offers in the future, yet within days of initialing each page and executing these Loan Agreements he was operating FSSC from his house servicing those client and signing up new ones.

i.     Within months he was forming Liberty CA and Phoenix and again initialing each page and signing a Partnership Agreement with his Phoenix partners engaging in business in direct competition with Liberty...."

j.     Opening bank account under Plaintiffs' name in order to divert, steal, convert, embezzle Plaintiffs' client fees to his account through impersonation, fraud, and theft.

k.     Agreed to indemnify and hold harmless and pay for any suit, expenses, etc., etc., etc. related to defending claims which he himself brought citing causes of action that he was in charge of supervising himself on.

-32-

l.  Agreed to grant Plaintiffs first lien and secured interest on any clients and any assets and fees, yet between Jan 2018-present has moved his clients around to 4 different processors in an effort to hide fees and assets, including SAS, RAM, EPPS, and GCS. He still has not provided the bank statements for all accounts for which he is a signor whether those are for any companies listed or others.

66.  As a result of Defendant's actions and omissions identified herein, he has received a benefit from Plaintiffs in excess of $5,800,300.00, based upon the use of statements in writing that were materially false representations (respecting his financial condition), on which Plaintiff reasonably relied and which Defendant caused to be made and published with intent to deceive.

67.  As a result of such actions/omissions, Plaintiffs have accordingly been damaged by Defendant in an amount in excess of $5,800,300.00, plus interest, costs and attorneys' fees which continue to accrue.

68.  Accordingly, pursuant to 11 U.S.C. § 523(a)(2)(B), the above described claims for relief are non-dischargeable.

## THIRD CAUSE OF ACTION
## NONDISCHARGEABILITY OF DEBT TO PLAINTIFFS UNDER 11 U.S.C. § 523(A)(4)
*(For fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny)*

69.  Plaintiffs repeat, reallege and embody herein by this reference paragraphs 1-68 above, as if fully set forth herein..

70.  Plaintiffs allege that the claims for relief arising from the actions and omissions of Defendant, as set forth herein, are non-dischargeable pursuant to 11 U.S.C. § 523(a)(4) in that they establish a claim for "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." Upon information and belief, and as set forth above, Defendant undertook the fraudulent actions/omissions described herein while acting in a fiduciary capacity for the Plaintiffs, and such actions/omissions were undertaken in furtherance of a fraudulent financial scheme to permanently deprive the Plaintiffs of their money.

71.    On or around December 15, 2017, Defendant approached Plaintiffs' representative Roche and got him to loan him $2,000.00 in cash on behalf of Plaintiffs to help him have the root canal, obtaining money from Roche under false pretenses and false representations. Defendant took the "root canal" money and formed Liberty Financial USA, LLC in California on December 18, 2017 in order to fraudulently operate under the same name.

72.    The same day, December 18, 2017 , again using his "root canal" money, Defendant also formed Phoenix Financial Solutions, LLC in California with the sole purpose of copying Plaintiff and its business and in order to further perpetuate his fraud.

73.    Knowing no bounds and in furtherance of his civil and criminal fraud, Defendant then obtained an Employment Identification Number for each entity, Liberty CA EIN: 47-2430031 and Phoenix EIN: 82-3854036 and opened bank accounts for each entity at Wells Fargo located at 19081 Goldenwest St, Huntington Beach CA 92648 and Chase Bank located at 19461 Main St, Ste 102, Huntington Beach CA 92648.

74.    On or about January 10, 2018, Defendant emailed Kim Stratford at Secure Account Service ("SAS"), Plaintiffs' payment processor, with the Subject line: "Updated Application Documents for name Change to Liberty Financial USA" including a signature with the name "Thomas Lynch" and stating if you "have any questions you may call me on my cell at 714-321-6971." Later the same day, Defendant sent a second email to Kim Stratford at SAS the subject line "Updated Banking Info for Liberty Financial USA" and included a copy of the new Liberty Financial USA bank account that Defendant opened in his name as signatory.

75.    On or about February 10, 2018 after over a month, Plaintiff contacted SAS and inquired about its clients fees that had not deposited into its bank accounts and was told that on January 10, 2018, a month prior, Defendant had provided SAS with new banking information for Plaintiffs' company and that the client fees were depositing into that account. Defendant was not entitled to any client funds of Plaintiff and was merely a 1099

1   Independent Contractor and only by fraudulently impersonating Plaintiff was he able to

2   convert Plaintiffs' client funds for his personal use by diverting and stealing Plaintiffs'

3   client funds by impersonating Plaintiff Liberty USA to Plaintiffs' processor SAS.

4   76.   On or around January 29, 2018, when SAS tried to reverse the funds that were fraudulently

5   converted and embezzled, the account came back NSF and Defendant has been in

6   possession of those funds since. Defendant is now the subject of on-going criminal

7   investigation by several state and federal agencies in California and Arizona where SAS is

8   located related to this matter of stealing Plaintiffs' client fees through fraud, impersonation,

9   and other means.

10   77.   Defendant basically formed companies by the same name as Plaintiffs' companies, and

11   submitted his own account information to Plaintiffs' processor in order to divert Plaintiffs'

12   client funds to him, keeping money from clients of FSSC and Phoenix that he assigned,

13   pledge, secured, collateralized, hypothecated to Plaintiffs.

14   78.   As a result of Defendant's actions and omissions identified herein, he has received a

15   benefit from the Plaintiffs in excess of $5,800,300.00, through his role as the Plaintiffs'

16   partner, fiduciary and through fraud, defalcation, embezzlement and larceny.

17   79.   As a result of such actions/omissions, the Plaintiffs have accordingly been damaged in an

18   amount in excess of $5,800,300.00 plus interest, costs and attorneys' fees which continue

19   to accrue.

20   80.   Accordingly, pursuant to 11 U.S.C. § 523(a)(4), the above described claims for relief are

21   non-dischargeable.

**FOURTH CAUSE OF ACTION**
**NONDISCHARGEABILITY OF DEBT TO PLAINTIFFS UNDER 11 U.S.C. § 523(a)(6)**
*(For willful and malicious injury by the debtor to another entity or the property of another entity)*

81.   Plaintiffs repeat, reallege and embody herein by this reference paragraphs 1-80 above, as if

fully set forth herein.

82.   Plaintiffs allege that the claims for relief arising from the actions and omissions of

4/17-1:34pm                                    -35-

1    Defendant, as set forth herein, are non-dischargeable pursuant to 11 U.S.C. § 523(a)(6) in

2    that it reflects "willful and malicious injury by the debtor to another entity or the property

3    of another entity."

4    83.    Upon information and belief, such actions/omissions were undertaken in furtherance of a

5    fraudulent financial scheme to deprive the Plaintiffs of their money through false promises,

6    fraudulent inducements, deception and actual fraud, which caused the Plaintiffs to pay

7    Defendant over $500,000.00.

8    84.    Each of the actions/omissions of Defendant set forth herein were undertaken willfully and

9    maliciously by Defendant with the intent to permanently deprive the Plaintiffs of their

10    monies.

11    85.    As a result of Defendant's actions and omissions identified herein, he has received a

12    benefit from the Plaintiffs in excess of $5,800,300.00, based upon his willful and malicious

13    actions in depriving the Plaintiffs of their money and property.

14    86.    As a result of such actions/omissions, the Plaintiffs have accordingly been damaged in an

15    amount in excess of $5,800,300.00, plus interest, costs and attorneys' fees which continue

16    to accrue.

17    87.    Accordingly, pursuant to 11 U.S.C. § 523(a)(6), the above described claims for relief are

18    non-dischargeable.

19    **FIFTH CAUSE OF ACTION**
**UNFAIR, UNLAWFUL AND FRAUDULENT BUSINESS PRACTICE**
20    **CAL. BUS. & PROF. CODE § 17200. ET SEQ.**

21    88.    Plaintiffs repeat, reallege and embody herein by this reference paragraphs 1-87 above, as if

22    fully set forth herein..

23    89.    Defendant's actions as complained of herein were undertaken in the course of business

24    activities, and constitute one or more unfair, unlawful or fraudulent business practices

25    under California Business and Professions Code Sections 17200, et seq.

26    90.    By reason of Defendant's unfair, unlawful, or fraudulent business practices, Plaintiffs are

27

28

1    entitled to full and immediate restitution of the balance owed as well as their attorneys'

2    fees and costs in bringing and litigating this action.

3    **SIXTH CAUSE OF ACTION**
     **DENIAL OF DISCHARGE UNDER 11 U.S.C. § 727(a)(2)(A)**

4    *(For transferring, removing, destroying, mutilating or concealing Property of the Estate with*

5    *intent to hinder, delay, or defraud a creditor within one year before the date of filing the petition)*

6    91.    Plaintiffs repeat, reallege and embody herein by this reference paragraphs 1-90 above, as if

7            fully set forth herein.

8    92.    11 U.S.C. § 727(a)(2)(A) provides in pertinent part: "The court shall grant the debtor a

9            discharge, unless — (2) the debtor, with intent to hinder, delay, or defraud a creditor or an

10           officer of the estate charged with custody of property under this title, has transferred,

11           removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed,

12           destroyed, mutilated, or concealed — (A) property of the debtor, within one year before the

13           date of the filing of the petition."

14   93.    Plaintiffs are informed and believe and based thereupon allege that debtor has violated 11

15           U.S.C. § 727(a)(2)(A) in that: Within the year of the Petition Date, Debtor owned the

16           following companies and concealed his ownership interest in said company from his

17           Petition and Schedules:

18           a.    **APHEX PROCESSING CENTER, INC.,** 9741 Bolsa Ave, Suite 217,

19                 Westminster CA 92683;

20           b.    **APHEX PROCESSING CENTER, INC.,** 1740 H Dell Range Blvd #281

21                 Cheyenne WY 82009;

22           c.    **BRIDGELINK INSURANCE AND FINANCIAL SERVICES, INC**., 13681

23                 Newport Ave., Suite 8348, Tustin CA 92780;

24           d.    **BROCATO ENTERPRISES, INC**., 4769 Mount Ashmun Drive, San Diego CA

25                 92111;

26           e.    **CAFÉ DE LA MONTANA, LLC**, 13681 Newport Ave., Suite 8348, Tustin CA

27

28

92780;

f.    **COLOMBIA DIRECT GROUP S.A.S,** Pueblo Rico-Tarso, Antioquia, Colombia;

g.    **COLOMBIA DIRECT GROUP, LLC**, 13681 Newport Ave., Suite 8348, Tustin CA 92780;

h.    **CONSUMER AFFAIRS LAW CENTER, INC**., 1120 Sycamore Avenue, Suite 2F, Vista CA 92081;

i.    **CONSUMER AFFAIRS LEGAL CENTER, INC**., 17461 Derian Ave Ste 200, Irvine CA 92614-5820;

j.    **CONSUMER AFFAIRS PROCESSING CENTER INC**., 17461 Derian Ave Ste 200, Irvine CA 92614-5820;

k.    **FINANCIAL SOLUTIONS, INC.,** 13681 Newport Ave, Tustin CA 92780-4689, 800-793-5357;

l.    **FINANCIAL SOLUTIONS SERVICE CENTER LLC.,** 13681 Newport Ave, Tustin CA 92780-4689, Phone: 949-423-7811;

m.    **FINANCIAL SOLUTIONS CONSUMER CENTER**, 13681 Newport Ave., Suite 8348, Tustin CA 92780;

n.    **LEGAL CONSUMER CREDIT INSTITUTE, LLC**., 202 Fashion Ln Ste 210, Tustin CA 92780-3320;

o.    **LEGAL SERVICES SUPPORT GROUP, LLC**, 2480 Irvine Blvd Apt 180, Tustin CA 92782-8028;

p.    **LIBERTY FINANCIAL USA, LLC**., 13681 Newport Ave Ste 8348, Tustin CA 92780;

q.    **LYNCH FINANCIAL SOLUTIONS, INC**., 4521 PGA Blvd Ste 150, Palm Beach Gardens FL 33418-3997;

r.    **LYNCH FINANCIAL SOLUTIONS, INC**., 5200 N Flagler Dr Apt 405, West Palm Beach FL 33407-2774;

1     s.     **LYNCH FINANCIAL SOLUTIONS, INC**., 1030 Summit Place Cir Apt B, West

2          Palm Beach FL 33415-4700; &

3     t.     **LYNCH FINANCIAL SOLUTIONS, INC**., 2480 Irvine Blvd Apt 180, Tustin

4          CA 92782-8028.

5     u.     **LYNCH FINANCIAL SOLUTIONS, INC**., 13681 Newport Ave., Suite 8348,

6          Tustin CA 92780;

7     v.     **PHOENIX FINANCIAL SOLUTIONS, LLC**, 13681 Newport Ave., Suite 8348,

8          Tustin CA 92780;

9     w.     **WYNN AND LYNCH HOLDINGS, LLC**, 120 Tustin Ave., Suite C #1025,

10         Newport Beach CA 92663.

11   94.    Plaintiffs are informed and believe and based thereupon allege that debtor has violated 11

12         U.S.C. § 727(a)(2)(A) in that: Within the year of the Petition Date, Debtor owned the

13         following partnerships and concealed his ownership interest in said partnerships from his

14         Petition and Schedules.

15     a.     **APHEX PROCESSING CENTER, INC.,** 9741 Bolsa Ave, Suite 217,

16          Westminster CA 92683;

17     b.     **APHEX PROCESSING CENTER, INC.,** 1740 H Dell Range Blvd #281

18          Cheyenne WY 82009;

19     c.     **BRIDGELINK INSURANCE AND FINANCIAL SERVICES, INC**., 13681

20          Newport Ave., Suite 8348, Tustin CA 92780;

21     d.     **BROCATO ENTERPRISES, INC**., 4769 Mount Ashmun Drive, San Diego CA

22          92111;

23     e.     **CAFÉ DE LA MONTANA, LLC**, 13681 Newport Ave., Suite 8348, Tustin CA

24          92780;

25     f.     **COLOMBIA DIRECT GROUP S.A.S,** Pueblo Rico-Tarso, Antioquia, Colombia;

26     g.     **COLOMBIA DIRECT GROUP, LLC**, 13681 Newport Ave., Suite 8348, Tustin

27

28

4/17-1:34pm

1    CA 92780;

2    h.    **CONSUMER AFFAIRS LAW CENTER, INC**., 1120 Sycamore Avenue, Suite

3    2F, Vista CA 92081;

4    i.    **CONSUMER AFFAIRS LEGAL CENTER, INC**., 17461 Derian Ave Ste 200,

5    Irvine CA 92614-5820;

6    j.    **CONSUMER AFFAIRS PROCESSING CENTER INC**., 17461 Derian Ave Ste

7    200, Irvine CA 92614-5820;

8    k.    **FINANCIAL SOLUTIONS, INC.**, 13681 Newport Ave, Tustin CA 92780-4689,

9    800-793-5357;

10    l.    **FINANCIAL SOLUTIONS SERVICE CENTER LLC.**, 13681 Newport Ave,

11    Tustin CA 92780-4689, Phone: 949-423-7811;

12    m.    **FINANCIAL SOLUTIONS CONSUMER CENTER**, 13681 Newport Ave.,

13    Suite 8348, Tustin CA 92780;

14    n.    **LEGAL CONSUMER CREDIT INSTITUTE, LLC.**, 202 Fashion Ln Ste 210,

15    Tustin CA 92780-3320;

16    o.    **LEGAL SERVICES SUPPORT GROUP, LLC**, 2480 Irvine Blvd Apt 180,

17    Tustin CA 92782-8028;

18    p.    **LIBERTY FINANCIAL USA, LLC**., 13681 Newport Ave Ste 8348, Tustin CA

19    92780;

20    q.    **LYNCH FINANCIAL SOLUTIONS, INC**., 4521 PGA Blvd Ste 150, Palm

21    Beach Gardens FL 33418-3997;

22    r.    **LYNCH FINANCIAL SOLUTIONS, INC**., 5200 N Flagler Dr Apt 405, West

23    Palm Beach FL 33407-2774;

24    s.    **LYNCH FINANCIAL SOLUTIONS, INC**., 1030 Summit Place Cir Apt B, West

25    Palm Beach FL 33415-4700; &

26    t.    **LYNCH FINANCIAL SOLUTIONS, INC**., 2480 Irvine Blvd Apt 180, Tustin

27

28

1    CA 92782-8028.

2    u.    **LYNCH FINANCIAL SOLUTIONS, INC.**, 13681 Newport Ave., Suite 8348,

3          Tustin CA 92780;

4    v.    **PHOENIX FINANCIAL SOLUTIONS, LLC**, 13681 Newport Ave., Suite 8348,

5          Tustin CA 92780;

6    w.    **WYNN AND LYNCH HOLDINGS, LLC**, 120 Tustin Ave., Suite C #1025,

7          Newport Beach, CA 92663.

8    95.  Plaintiffs are informed and believe and based thereupon allege that debtor has violated 11

9    U.S.C. § 727(a)(2)(A) in that: Within the year of the Petition Date, Debtor owned the

10   following automobiles and concealed his ownership interest in said automobiles from his

11   Petition and Schedules.

12   a.    **2009 CADILLAC ESCALADE HYBRID** - 4 Dr Wagon Sport Utility, VIN

13         1GYFC43539R114710

14   b.    **1974 PORSCHE CARRERA** - VIN 9114400309

15   c.    **2010 DODGE CHALLENGER** - VIN 2B3CJ7DW5AH219133

16   d.    **2018 TOYOTA CAMRY** - VIN JTNB11HK2J306835.

17   e.    **TOYOTA TRUCK** Toyota Account Number: Z991.

18   f.    **2007 JEEP GRAND CHEROKEE LAREDO**, VIN 1J8HS58327C509677.

19   96.  Plaintiffs are informed and believe and based thereupon allege that debtor has violated 11

20   U.S.C. § 727(a)(2)(A) in that: within the year of the Petition Date, Debtor owned the

21   following deposit accounts and concealed his ownership interest in said deposit accounts

22   from his Petition and Schedules.

23   a.    **GLOBAL CLIENT SOLUTIONS,** 4343 S 118th East Ave. Ste. #220, Tulsa OK

24         74146;

25   b.    **GLOBAL HOLDINGS**, 4343 S 118th East Ave. Ste. #220, Tulsa OK 74146;

26   c.    **RELIANT ACCOUNT MANAGEMENT**, 1301 Dove St #1030, Newport Beach

27

28

4/17-1:34pm

-41-

1     CA 92660;

2     d.    **EPPS,** P.O. Box 27740, Las Vegas NV 89126;

3     **e.**    **SECURE ACCOUNT SERVICE,** 430 Lake Havasu Ave., S., Suite 101, Lake

4       Havasu City AZ 86403;

5     f.    **WELLS FARGO & COMPANY,** Financial Solutions Service Center, LLC, Bank

6       Account Number: 9396240195;

7     g.    **LIBERTY FINANCIAL USA, LLC (CA);**

8     h.    **WELLS FARGO & COMPANY**, Financial Solutions Service Center, LLC.;

9 97. Plaintiffs are informed and believe and based thereupon allege that debtor has violated 11

10 U.S.C. § 727(a)(2)(A) in that: within the year of the Petition Date, Debtor owned the

11 following lawsuits and concealed his ownership interest in said lawsuits and Judgments

12 from his Petition and Schedules

13     a.    **OC WEST, LLC VS. THOMAS J. LYNCH, FINANCIAL SOLUTIONS**

14       **SERVICE CENTER, LLC**, Case Number: 30-2018-00983118-CU-CL-CJC,

15       Superior Court of California, County of Orange;

16     b.    **THOMAS J LYNCH AND MARY ANN LYNCH V. HEATHER CLARE**

17       **FITZGERALD**, Case Number: S648949, Superior Court of California, County of

18       San Diego;

19     c.    **THOMAS LYNCH VS MARYANA GOMEZ-LYNCH**, Case Number:

20       16D000271, Superior Court of California, County of Orange;

21     d.    **THOMAS LYNCH VS. LIBERTY DEBT SOLUTION, LLC, BRIAN**

22       **ROCHE**, Case Number: 30-2018-01016550-CU-OE-CJC.

23 98. By omitting his ownership of these assets from his bankruptcy, the Debtor transferred or

24 concealed said asset, with the intent to hinder, delay, or defraud his creditors and the

25 Trustee, to prevent the proper administration of the estate.

26 99. Defendant's discharge should be denied pursuant to 11 U.S.C. § 727(a)(2)(A).

27

28

4/17-1:34pm        -42-

## SEVENTH CAUSE OF ACTION
## DENIAL OF DISCHARGE UNDER 11 U.S.C. § 727(a)(2)(B)

*(For transferring, removing, destroying, mutilating or concealing Property of the Estate with intent to hinder, delay, or defraud a Creditor after the date of filing the petition)*

100.    Plaintiffs repeat, reallege and embody herein by this reference paragraphs 1-99 above, as if fully set forth herein.

101.    11 U.S.C. § 727(a)(2)(B) provides in pertinent part: "The court shall grant the debtor a discharge, unless — (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed — (B) property of the estate, after the date of the filing of the petition."

102.    Plaintiffs are informed and believe and based thereupon allege that debtor has violated 11 U.S.C. § 727(a)(2)(B) in that after the Petition Date, Debtor owned the following companies and concealed his ownership interest in said company from his Petition and Schedules:

    a.    **APHEX PROCESSING CENTER, INC.,** 9741 Bolsa Ave, Suite 217, Westminster CA 92683;

    b.    **APHEX PROCESSING CENTER, INC.,** 1740 H Dell Range Blvd #281 Cheyenne WY 82009;

    c.    **BRIDGELINK INSURANCE AND FINANCIAL SERVICES, INC**., 13681 Newport Ave., Suite 8348, Tustin CA 92780;

    d.    **BROCATO ENTERPRISES, INC**., 4769 Mount Ashmun Drive, San Diego CA 92111;

    e.    **CAFÉ DE LA MONTANA, LLC**, 13681 Newport Ave., Suite 8348, Tustin CA 92780;

    f.    **COLOMBIA DIRECT GROUP S.A.S,** Pueblo Rico-Tarso, Antioquia, Colombia;

1    g.    **COLOMBIA DIRECT GROUP, LLC**, 13681 Newport Ave., Suite 8348, Tustin

2          CA 92780;

3    h.    **CONSUMER AFFAIRS LAW CENTER, INC**., 1120 Sycamore Avenue, Suite

4          2F, Vista CA 92081;

5    i.    **CONSUMER AFFAIRS LEGAL CENTER, INC**., 17461 Derian Ave Ste 200,

6          Irvine CA 92614-5820;

7    j.    **CONSUMER AFFAIRS PROCESSING CENTER INC**., 17461 Derian Ave Ste

8          200, Irvine CA 92614-5820;

9    k.    **FINANCIAL SOLUTIONS, INC.**, 13681 Newport Ave, Tustin CA 92780-4689,

10         800-793-5357;

11   l.    **FINANCIAL SOLUTIONS SERVICE CENTER LLC.**, 13681 Newport Ave,

12         Tustin CA 92780-4689, Phone: 949-423-7811;

13   m.    **FINANCIAL SOLUTIONS CONSUMER CENTER**, 13681 Newport Ave.,

14         Suite 8348, Tustin CA 92780;

15   n.    **LEGAL CONSUMER CREDIT INSTITUTE, LLC**., 202 Fashion Ln Ste 210,

16         Tustin CA 92780-3320;

17   o.    **LEGAL SERVICES SUPPORT GROUP, LLC**, 2480 Irvine Blvd Apt 180,

18         Tustin CA 92782-8028;

19   p.    **LIBERTY FINANCIAL USA, LLC**., 13681 Newport Ave Ste 8348, Tustin CA

20         92780;

21   q.    **LYNCH FINANCIAL SOLUTIONS, INC**., 4521 PGA Blvd Ste 150, Palm

22         Beach Gardens FL 33418-3997;

23   r.    **LYNCH FINANCIAL SOLUTIONS, INC**., 5200 N Flagler Dr Apt 405, West

24         Palm Beach FL 33407-2774;

25   s.    **LYNCH FINANCIAL SOLUTIONS, INC**., 1030 Summit Place Cir Apt B, West

26         Palm Beach FL 33415-4700; &

27

28

1        t.      **LYNCH FINANCIAL SOLUTIONS, INC**., 2480 Irvine Blvd Apt 180, Tustin

2                CA 92782-8028.

3        u.      **LYNCH FINANCIAL SOLUTIONS, INC**., 13681 Newport Ave., Suite 8348,

4                Tustin CA 92780;

5        v.      **PHOENIX FINANCIAL SOLUTIONS, LLC**, 13681 Newport Ave., Suite 8348,

6                Tustin CA 92780;

7        w.      **WYNN AND LYNCH HOLDINGS, LLC**, 120 Tustin Ave., Suite C #1025,

8                Newport Beach CA 92663.

9  103.  Plaintiffs are informed and believe and based thereupon allege that debtor has violated 11

10       U.S.C. § 727(a)(2)(B) in that after the Petition Date, Debtor owned the following

11       partnerships and concealed his ownership interest in said partnerships from his Petition and

12       Schedules.

13       a.      **APHEX PROCESSING CENTER, INC.,** 9741 Bolsa Ave, Suite 217,

14                Westminster CA 92683;

15       b.      **APHEX PROCESSING CENTER, INC.,** 1740 H Dell Range Blvd #281

16                Cheyenne WY 82009;

17       c.      **BRIDGELINK INSURANCE AND FINANCIAL SERVICES, INC**., 13681

18                Newport Ave., Suite 8348, Tustin CA 92780;

19       d.      **BROCATO ENTERPRISES, INC**., 4769 Mount Ashmun Drive, San Diego CA

20                92111;

21       e.      **CAFÉ DE LA MONTANA, LLC**, 13681 Newport Ave., Suite 8348, Tustin CA

22                92780;

23       f.      **COLOMBIA DIRECT GROUP S.A.S,** Pueblo Rico-Tarso, Antioquia, Colombia;

24       g.      **COLOMBIA DIRECT GROUP, LLC**, 13681 Newport Ave., Suite 8348, Tustin

25                CA 92780;

26       h.      **CONSUMER AFFAIRS LAW CENTER, INC**., 1120 Sycamore Avenue, Suite

27

28

1    2F, Vista CA 92081;

2    i.    **CONSUMER AFFAIRS LEGAL CENTER, INC**., 17461 Derian Ave Ste 200,

3    Irvine CA 92614-5820;

4    j.    **CONSUMER AFFAIRS PROCESSING CENTER INC**., 17461 Derian Ave Ste

5    200, Irvine CA 92614-5820;

6    k.    **FINANCIAL SOLUTIONS, INC.,** 13681 Newport Ave, Tustin CA 92780-4689,

7    800-793-5357;

8    l.    **FINANCIAL SOLUTIONS SERVICE CENTER LLC.,** 13681 Newport Ave,

9    Tustin CA 92780-4689, Phone: 949-423-7811;

10   m.    **FINANCIAL SOLUTIONS CONSUMER CENTER**, 13681 Newport Ave.,

11   Suite 8348, Tustin CA 92780;

12   n.    **LEGAL CONSUMER CREDIT INSTITUTE, LLC**., 202 Fashion Ln Ste 210,

13   Tustin CA 92780-3320;

14   o.    **LEGAL SERVICES SUPPORT GROUP, LLC**, 2480 Irvine Blvd Apt 180,

15   Tustin CA 92782-8028;

16   p.    **LIBERTY FINANCIAL USA, LLC**., 13681 Newport Ave Ste 8348, Tustin CA

17   92780;

18   q.    **LYNCH FINANCIAL SOLUTIONS, INC**., 4521 PGA Blvd Ste 150, Palm

19   Beach Gardens FL 33418-3997;

20   r.    **LYNCH FINANCIAL SOLUTIONS, INC**., 5200 N Flagler Dr Apt 405, West

21   Palm Beach FL 33407-2774;

22   s.    **LYNCH FINANCIAL SOLUTIONS, INC**., 1030 Summit Place Cir Apt B, West

23   Palm Beach FL 33415-4700; &

24   t.    **LYNCH FINANCIAL SOLUTIONS, INC**., 2480 Irvine Blvd Apt 180, Tustin

25   CA 92782-8028.

26   u.    **LYNCH FINANCIAL SOLUTIONS, INC**., 13681 Newport Ave., Suite 8348,

27

28

1    Tustin CA 92780;

2        v.    **PHOENIX FINANCIAL SOLUTIONS, LLC**, 13681 Newport Ave., Suite 8348,

3            Tustin CA 92780;

4        w.    **WYNN AND LYNCH HOLDINGS, LLC**, 120 Tustin Ave., Suite C #1025,

5            Newport Beach CA 92663.

6    104.  Plaintiffs are informed and believe and based thereupon allege that debtor has violated 11

7        U.S.C. § 727(a)(2)(B) in that after the Petition Date, Debtor owned the following

8        automobiles and concealed his ownership interest in said automobiles from his Petition and

9        Schedules.

10        a.    **2009 CADILLAC ESCALADE HYBRID** - 4 Dr Wagon Sport Utility, VIN

11            1GYFC43539R114710

12        b.    **1974 PORSCHE CARRERA** - VIN 9114400309

13        c.    **2010 DODGE CHALLENGER** - VIN 2B3CJ7DW5AH219133

14        d.    **2018 TOYOTA CAMRY** - VIN: JTNB11HK2J306835.

15        e.    **TOYOTA TRUCK** - Toyota Account Number: Z991?

16        f.    **2007 JEEP GRAND CHEROKEE LAREDO**, VIN 1J8HS58327C509677.

17    105.  Plaintiffs are informed and believe and based thereupon allege that debtor has violated 11

18        U.S.C. § 727(a)(2)(B) in that after the Petition Date, Debtor owned the following deposit

19        accounts and concealed his ownership interest in said deposit accounts from his Petition

20        and Schedules.

21        a.    **GLOBAL CLIENT SOLUTIONS,** 4343 S 118th East Ave. Ste. #220, Tulsa OK

22            74146;

23        b.    **GLOBAL HOLDINGS,** 4343 S 118th East Ave. Ste. #220, Tulsa OK 74146;

24        c.    **RELIANT ACCOUNT MANAGEMENT,** 1301 Dove St #1030, Newport Beach

25            CA 92660;

26        d.    **EPPS,** P.O. Box 27740, Las Vegas NV 89126;

27

28

4/17-1:34pm

1    **e.**      **SECURE ACCOUNT SERVICE,** 430 Lake Havasu Ave., S., Suite 101, Lake

2          Havasu City AZ 86403;

3    f.      **WELLS FARGO & COMPANY,** Financial Solutions Service Center, LLC, Bank

4          Account Number: 9396240195

5    g.      **LIBERTY FINANCIAL USA, LLC (CA);**

6    h.      **WELLS FARGO & COMPANY**, Financial Solutions Service Center, LLC,

7          Business Market Rate Savings Account ending in 5594.

8  106.  Plaintiffs are informed and believe and based thereupon allege that debtor has violated 11

9        U.S.C. § 727(a)(2)(B) in that after the Petition Date, Debtor owned the following lawsuits

10        and concealed his ownership interest in said lawsuits and Judgments from his Petition and

11        Schedules

12    a.      **OC WEST, LLC VS. THOMAS J. LYNCH, FINANCIAL SOLUTIONS**

13          **SERVICE CENTER, LLC**, Case Number: 30-2018-00983118-CU-CL-CJC,

14          Superior Court of California, County of Orange;

15    b.      **THOMAS J LYNCH AND MARY ANN LYNCH V. HEATHER CLARE**

16          **FITZGERALD**, Case Number: S648949, Superior Court of California, County of

17          San Diego;

18    c.      **THOMAS LYNCH VS MARYANA GOMEZ-LYNCH**, Case Number:

19          16D000271, Superior Court of California, County of Orange;

20    d.      **THOMAS LYNCH VS. LIBERTY DEBT SOLUTION, LLC, BRIAN**

21          **ROCHE**, Case Number: 30-2018-01016550-CU-OE-CJC.

22  107.  By omitting his ownership of these assets from his bankruptcy, the Debtor transferred or

23        concealed said asset, with the intent to hinder, delay, or defraud his creditors and the

24        Trustee, to prevent the proper administration of the estate.

25  108.  Defendant's discharge should be denied pursuant to 11 U.S.C. § 727(a)(2)(B).

26

27

28

**EIGHTH CAUSE OF ACTION**
**DENIAL OF DISCHARGE UNDER 11 U.S.C. § 727(a)(3)**
*(For concealing, destroying, mutilating, falsifying, or failing to keep or preserve*
*any recorded information from which debtor's financial condition or*
*business transactions might be ascertained)*

109. Plaintiffs repeat, reallege and embody herein by this reference paragraphs 1-108 above, as if fully set forth herein..

110. 11 U.S.C. § 727(a)(3) provides in pertinent part: "The court shall grant the debtor a discharge, unless – the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which debtor's financial condition or business transactions might be ascertained."

111. Following Defendant's 341 Exam on February 27, 2019, and at the request of the US Trustee, Plaintiffs provided Defendant and his attorney on March 1, 2019 with a written list of documents and information to be produced prior to the Meeting of Creditors on April 3, 2019. The list included, but was not limited to:

a.    Last filed federal income tax return for Thomas Joseph Lynch.

b.    Copy of lease for the Findley Circle property and copy of any eviction notice.

c.    Copy of lease for 792 Center St., Costa Mesa CA 92627

d.    For each entity (corporation, partnership or LLC) in which the Debtor owns an interest over the last 4 years, domestically or internationally:

(I) Bank statements from January 1, 2017 forward for all business accounts, including but not limited to Wells Fargo and Chase.

(ii) Check register or cancelled checks for each of the above accounts for the same period (if there is not a complete check register or check ledger, then cancelled checks are necessary)

(iii) Most recent financial statement (income and expense and balance sheet)

(iv) Tax return

1    (v) A list of all other entities (corporations, partnerships or LLCs) owned or

2    controlled by any of the entities described in Paragraph d above.

3    e.    All documents pertaining to any loans taken against the Debtor's Porsche Carrera

4    VIN 9114400309, and all documents pertaining to any sale of that vehicle. This

5    request includes but is not limited to any loan from Fast Money Loan, as well as

6    any purchase of the vehicle by Ross Tesser.

7    f.    For each of the Debtor's personal bank accounts:

8    (I) Bank statements from January 1, 2017 forward

9    (ii) Check register or cancelled checks for the same period (if there is not a

10    complete check register or check ledger, then cancelled checks are necessary)

11    g.    Judgment for dissolution of marriage, property settlement agreement and property

12    division judgment

13    h.    List of all software programs patents or licenses owned by the Debtor or by any

14    entity in which the Debtor owns an interest, or is the officer or manager, including

15    but not limited to the software CRM system, including the estimated value of each

16    program, patent or license.

17    i.    Inventory of all computers and phone systems owned by the Debtor or by any entity

18    in which the Debtor owns an interest, including estimated value of same.

19    j.    All written agreements between the Debtor and Ryan Stimson relating to Aphex,

20    Ira Frazer, and Thomas More.

21    k.    Inventory of all property in storage, with estimated value.

22    l.    All documents related to monies owed to John Hung Nguyen.

23    m.     All documents relating to any loan taken against the Debtor's Harley Davidson

24    VIN 1HD1AAK188Y047910.

25    n.    Copies of the lease auto purchase and auto lease agreements listed in the Debtor's

26    Schedule D.

27

28

4/17-1:34pm

1    o.    All documents showing ownership and location of any real property, equipment,

2    coffee beans/seeds owned either by Maryana Gomez or by the Debtor. Including

3    but not limited to: the San Andres property and the house the Debtor describes as

4    "My wife and I have outside of Medellin close to the airport that sits on top of a

5    mountain"; all "coffee farms"; and the "San Jose Estate".

6    p.    Contact information for Gabriel Jaime Gomez.

7    q.    All documents establishing the ownership interest in Marsea Club, LLC, whether in

8    the Debtor's name or in the Debtor's ex-wife's name. The names of all entities

9    owned or controlled by Maryana Gomez in which the Debtor or any entity in which

10    the Debtor owns an interest.

11    r.    Formation documents for Phoenix Financial Solutions, LLC, including Operating

12    Agreement, articles, and any amendments thereto.

13    s.    Documents pertaining to the sale of the Debtor's Cadillac Escalade.

14    112.    On March 4, 2019, the US Trustee requested the Defendant and his attorney produce the

15    following documents addition to the documents on Plaintiffs list:

16    a.    Copy of labor complaint against Liberty Debt Solution LLC

17    b.    Documents re: sale of Porsche to Ross Tesser;

18    c.    Amend to list assets listed in divorce documents--docs and info re: Marsea Club,

19    money to Gabriel Jaime Lopez--contact info, loan to Scott Campbell, CRM

20    software and value;

21    d.    Bank statements and check registers/canceled checks on all accounts from Jan-2017

22    to present;

23    e.    Any corporate returns not already produced;

24    f.    List in Schedule B and SOFA any and all business interests within last four years;

25    g.    International business interests.

26    113.    In an email and letter dated April 1, 2019, Defendant and his counsel informed the US

27

28

1    Trustee and Plaintiffs that:

2        a.    Thomas Lynch does not want, and is not obliged to provide documents such as his

3              tax returns, bank statements, his confidential marital settlement agreement, or other

4              sensitive documents;

5        b.    Plaintiff is not entitled to receive copies of such documents;

6        c.    A copy of the last filed federal income tax return for Thomas Joseph Lynch will not

7              be provided to Plaintiff;

8        d.    Check register or cancelled checks for the period of January 1, 2017 forward will

9              not be provided to Plaintiff;

10       e.    That the CRM system is non-operational and has no value;

11       f.    Bill of sale relating to Aphex, Ira Frazer, and Thomas Moore will not be provided

12             to Plaintiff;

13       g.    Ownership documents of any real property, equipment, coffee beans or seeds

14             because Defendant either doesn't own it or never has, however does reference a

15             piece of property owned by his ex-wife Maryanna Gomez who received it as an

16             inheritance from her father's passing, which was part of Defendant's divorce

17             proceeding, and all of which Defendant refuses to provide to Plaintiff, among other

18             books, documents, records and papers Defendant refuses to produce due to it being

19             concealed, destroyed, mutilated, falsified, or preserved;

20   114.   By concealing, destroying, mutilating, falsifying, or failing to keep or preserve any

21          recorded information, including books, documents, records and paper, from which

22          Defendant's financial condition or business transactions might be ascertained, Defendant

23          has prevented Plaintiff and Trustee from the proper administration of the estate.

24   115.   Defendant's discharge should be denied pursuant to 11 U.S.C. § 727(a)(3).

25

26

27

28

**NINTH CAUSE OF ACTION**
**DENIAL OF DISCHARGE UNDER 11 U.S.C. § 727(a)(4)(A)**
*(For knowingly and fraudulently, in or in connection with the case made a false oath or account)*

116.  Plaintiffs repeat, reallege and embody herein by this reference paragraphs 1-115 above, as if fully set forth herein..

117.  11 U.S.C. § 727(a)(4)(a) provides in pertinent part: "The court shall grant the debtor a discharge, unless – the debtor knowingly and fraudulently, in or in connection with the case – (A) made a false oath or account."

118.  Under penalty of perjury, the Debtor attested to the truth, accuracy and completeness of information contained in the bankruptcy Petition, Schedules and Statement of Financial Affairs for the instant case by signing the voluntary Petition, declaration concerning Debtors' schedules, and declaration following the Statement of Financial Affairs.

119.  At his 341(a), the Debtor again testified that the information contained in his Petition, Schedules and Statement of Financial Affairs was true and accurate.

120.  However, as detailed below, Defendants' statements and schedules have been replete with false oaths or accounts that were knowingly and fraudulently made with the intent to hide assets from the Trustee and Defendants' creditors.

121.  Official Form 101, Voluntary Petition for Individuals Filing for Bankruptcy, Part 1, Question #2, All other names you have used in the last 8 years. Debtor wrote "none." That is false. Debtor uses the following eight (8) aliases and did not disclose them:

   a.     "**THOMAS J. HUMPHREYS**,"

   b.     "**TOM LYNCH JR**,"

   c.     "**THOMAS J. LYNCH**,"

   d.     "**THOMAS J. LYNCH JR.**,"

   e.     "**THOMAS J. LYNNCH**,"

   f.     "**TOM BRADLEY**,"

   g.     "**THOMAS. BRADLEY**," &

1      h.     **"CHERYL SCOTT."**

2  122.  Official Form 101, Voluntary Petition for Individuals Filing for Bankruptcy, Part 1,

3      Question #3, the Debtor listed only one Social Security Number xxx-xx-2119. That is

4      false. The Debtor uses another Social Security Number **xxx-xx-3145** which was not

5      disclosed.

6  123.  Official Form 101, Voluntary Petition for Individuals Filing for Bankruptcy, Part 1,

7      Question #4, Any business names and Employer Identification Numbers (EIN) you have

8      used in the last 8 years. Debtor wrote "none." That is false. Debtor has used the following

9      business names in the last 8 years (none were listed):

10      a.     **APHEX PROCESSING CENTER, INC.,** 9741 Bolsa Ave, Suite 217,

11           Westminster CA 92683;

12      b.     **APHEX PROCESSING CENTER, INC.,** 1740 H Dell Range Blvd #281

13           Cheyenne WY 82009;

14      c.     **BRIDGELINK INSURANCE AND FINANCIAL SERVICES, INC**., 13681

15           Newport Ave., Suite 8348, Tustin CA 92780;

16      d.     **BROCATO ENTERPRISES, INC**., 4769 Mount Ashmun Drive, San Diego CA

17           92111;

18      e.     **CAFÉ DE LA MONTANA, LLC**, 13681 Newport Ave., Suite 8348, Tustin CA

19           92780;

20      f.     **COLOMBIA DIRECT GROUP S.A.S,** Pueblo Rico-Tarso, Antioquia, Colombia;

21      g.     **COLOMBIA DIRECT GROUP, LLC**, 13681 Newport Ave., Suite 8348, Tustin

22           CA 92780;

23      h.     **CONSUMER AFFAIRS LAW CENTER, INC**., 1120 Sycamore Avenue, Suite

24           2F, Vista CA 92081;

25      i.     **CONSUMER AFFAIRS LEGAL CENTER, INC**., 17461 Derian Ave Ste 200,

26           Irvine CA 92614-5820;

27

28

j.   **CONSUMER AFFAIRS PROCESSING CENTER INC.**, 17461 Derian Ave Ste 200, Irvine CA 92614-5820;

k.   **FINANCIAL SOLUTIONS, INC.**, 13681 Newport Ave, Tustin CA 92780-4689, 800-793-5357;

l.   **FINANCIAL SOLUTIONS SERVICE CENTER LLC.**, 13681 Newport Ave, Tustin CA 92780-4689, Phone: 949-423-7811;

m.   **FINANCIAL SOLUTIONS CONSUMER CENTER**, 13681 Newport Ave., Suite 8348, Tustin CA 92780;

n.   **LEGAL CONSUMER CREDIT INSTITUTE, LLC.**, 202 Fashion Ln Ste 210, Tustin CA 92780-3320;

o.   **LEGAL SERVICES SUPPORT GROUP, LLC**, 2480 Irvine Blvd Apt 180, Tustin CA 92782-8028;

p.   **LIBERTY FINANCIAL USA, LLC.**, 13681 Newport Ave Ste 8348, Tustin CA 92780;

q.   **LYNCH FINANCIAL SOLUTIONS, INC.**, 4521 PGA Blvd Ste 150, Palm Beach Gardens FL 33418-3997;

r.   **LYNCH FINANCIAL SOLUTIONS, INC.**, 5200 N Flagler Dr Apt 405, West Palm Beach FL 33407-2774;

s.   **LYNCH FINANCIAL SOLUTIONS, INC.**, 1030 Summit Place Cir Apt B, West Palm Beach FL 33415-4700; &

t.   **LYNCH FINANCIAL SOLUTIONS, INC.**, 2480 Irvine Blvd Apt 180, Tustin CA 92782-8028.

u.   **LYNCH FINANCIAL SOLUTIONS, INC.**, 13681 Newport Ave., Suite 8348, Tustin CA 92780;

v.   **PHOENIX FINANCIAL SOLUTIONS, LLC**, 13681 Newport Ave., Suite 8348, Tustin CA 92780;

1    w.    **WYNN AND LYNCH HOLDINGS, LLC**, 120 Tustin Ave., Suite C #1025,

2         Newport Beach CA 92663.

3  124.  Official Form 101, Voluntary Petition for Individuals Filing for Bankruptcy, Part 6,

4       Question #16: What kind of debts do you have? The Debtor wrote in 16.a that his debts

5       were primarily consumer debts, and in 16b wrote that his debts are not primarily business

6       debts. That is false. The Debtor is being sued for primarily business debt as follows:

7    a.    **LAWSUIT #1: OC WEST, LLC VS. THOMAS J. LYNCH**, Superior Court of

8         California, County of Orange, Case No.: 30-2018-00983118-CU-CL-CJC Demand:

9         **$48,500** plus legal, costs, and fee. His company FSSC is named as a Defendant. He

10         answered and filed a cross complaint on behalf of himself and FSSC. This matter

11         cross pollinates with other questions he lied on since he filed a cross complaint

12         seeking $11,500.00 that was not disclosed in any filing.

13    b.    **LAWSUIT #2: LIBERTY DEBT SOLUTION, LLC V. THOMAS JOSEPH**

14         **LYNCH**, et. al. District Court, Clark County, Nevada, Case No.: A-18-78005-C.

15         DEMAND: **$5,500,015.00** plus attorneys fees, costs, and expenses. FSSC and

16         Phoenix are also named as Defendants for this debt.

17    c.    **LAWSUIT #3: In re: BROOKE CORPORATION, et al.; ALBERT A.**

18         **RIEDERER, CHAPTER 7 TRUSTEE OF BROOKE CORPORATION,**

19         **BROOK CAPITAL CORPORATION, AND BROOK INVESTMENTS V.**

20         **RANDANN INSURANCE SERVICES**, et. al., In the United States Bankruptcy

21         Court For the District of Kansas, Kansas City Division, Case No.: 08-22786-DLS,

22         Adv. No.: 10-06179, pursuant to recovery of monies under 11 U.S.C. § 548 and

23         K.S.A. § 33-205 in which United States Bankruptcy Judge Dale L. Somers Granted

24         an Order For Default Judgment against Defendant in the amount of $13,124.42

25  125.  Official Form 106A/B, Schedule A/B: Property, Part 1, Question #3: Do you own, lease, or

26       have legal or equitable interest in any vehicles, whether they are registered or not? Include

27

28

1    any vehicles you own that someone else drives. If you lease a vehicle, also report it on

2    Schedule G: Executory Contracts and Unexpired Leases. Debtor only listed a Harley

3    Davidson Motorcycle. That is false. The Debtor owns, or leases, or uses five other vehicles

4    that he did not disclose:

5        a.    **2009 CADILLAC ESCALADE HYBRID** - 4 Dr Wagon Sport Utility, VIN

6              1GYFC43539R114710

7        b.    **1974 PORSCHE CARRERA** - VIN 9114400309

8        c.    **2010 DODGE CHALLENGER** - VIN 2B3CJ7DW5AH219133

9        d.    **2018 TOYOTA CAMRY** - VIN: JTNB11HK2J306835.

10       e.    **TOYOTA TRUCK** - Toyota Motor Credit Account Number ending in Z991.

11       f.    **2007 JEEP GRAND CHEROKEE LAREDO**, VIN: 1J8HS58327C509677.

12   126.  Official Form 106A/B, Schedule A/B: Property, Part 1, Question #17: Deposits of money.

13       The Debtor only listed 10 bank accounts: 17.1. Checking Account: Chase No. 9747

14       $1,243.00; 17.2. Savings Account: Chase $50.00; 17.3. Checking Account, Chase No 3404

15       $310.00; 17.4. Checking Account, Chase No. 6620 $44.00; 17.5. Savings Account, Chase

16       No. 6052 $67.00; 17.6. Joint Checking Account with ex-wife, Chase $1.00; 17.7. Checking

17       Account, Nu Vision CU No. 7108 $4.50; 17.8. Savings Account, Nu Vision CU No. 7100

18       $5.00; 17.9. Savings Account, Wescom CU No. 5654 $25.00; & 17.10 Unemployment

19       Debit Card Account, Bank of America No. 4427434115077610, $243.38. However, that is

20       false. The Debtor omitted the following nine bank accounts/entities from his Schedule B:

21       a.    **GLOBAL CLIENT SOLUTIONS, ~~LLC~~,** 4343 S 118th East Ave. Ste. #220,

22             Tulsa OK 74146;

23       b.    **GLOBAL HOLDINGS,** 4343 S 118th East Ave. Ste. #220, Tulsa OK 74146;

24       c.    **RELIANT ACCOUNT MANAGEMENT,** 1301 Dove St #1030, Newport Beach

25             CA 92660;

26       d.    **EPPS,** P.O. Box 27740, Las Vegas NV 89126;

27

28

1    e.    **SECURE ACCOUNT SERVICE,** 430 Lake Havasu Ave., S., Suite 101, Lake

2        Havasu City AZ 86403;

3    f.    **WELLS FARGO & COMPANY,** Financial Solutions Service Center, LLC, Bank

4        Account No. 9396240195

5    g.    **LIBERTY FINANCIAL USA, LLC (CA)** Bank Account, information unknown;

6    h.    **WELLS FARGO & COMPANY**, Financial Solutions Service Center, LLC,

7        Business Market Rate Savings Account ending in 5594;

8  127.  Official Form 106A/B, Schedule A/B: Property, Part 1, Question # 19: Non-publicly traded

9  stock and interests in incorporated and unincorporated businesses, including an interest in

10  an LLC, partnership, and joint venture. The Debtor only listed the following five

11  businesses: Financial Solutions Service Center, LLC 50%, Unknown; Marsea Club, LLC-

12  non operating, never started %, $0.00; Phoenix Financial Solutions, fledgling business no

13  earnings yet %, $0.00. Café de la Montana LLC a California LLC (never operated)

14  Location: 6787 Findley Cir, Huntington Beach CA 92648 5% $0.00; & Liberty Financial

15  USA, a California LLC, Location: 6787 Findley Cir, Huntington Beach CA 92648 No

16  income business 100% $0.00. However, that is false. The Debtor has interests in the

17  following TWENTY-THREE businesses all were omitted from his Schedule:

18    a.    **APHEX PROCESSING CENTER, INC**., 9741 Bolsa Ave, Suite 217,

19        Westminster CA 92683;

20    b.    **APHEX PROCESSING CENTER, INC**., 1740 H Dell Range Blvd #281

21        Cheyenne WY 82009;

22    c.    **BRIDGELINK INSURANCE AND FINANCIAL SERVICES, INC**., 13681

23        Newport Ave., Suite 8348, Tustin CA 92780;

24    d.    **BROCATO ENTERPRISES, INC**., 4769 Mount Ashmun Drive, San Diego CA

25        92111;

26    e.    **CAFÉ DE LA MONTANA, LLC**, 13681 Newport Ave., Suite 8348, Tustin CA

27

28

4/17-1:34pm

-58-

1    92780;

2    f.    **COLOMBIA DIRECT GROUP** S.A.S, Pueblo Rico-Tarso, Antioquia, Colombia;

3    g.    **COLOMBIA DIRECT GROUP, LLC**, 6787 Findley Circle, Huntington Beach

4          CA 92648;

5    h.    **CONSUMER AFFAIRS LAW CENTER, INC**., 1120 Sycamore Avenue, Suite

6          2F, Vista CA 92081

7    i.    **CONSUMER AFFAIRS LEGAL CENTER, INC**., 17461 Derian Ave Ste 200,

8          Irvine CA 92614-5820, Phone: 949-596-8103;

9    j.    **CONSUMER AFFAIRS PROCESSING CENTER INC**., 17461 Derian Ave Ste

10         200, Irvine CA 92614-5820;

11   k.    **FINANCIAL SOLUTIONS, Inc.**, 13681 Newport Ave, Tustin CA 92780-4689,

12         800-793-5357;

13   l.    **FINANCIAL SOLUTIONS SERVICE CENTER LLC**., Address: 13681

14         Newport Ave, Tustin CA 92780-4689, Phone: 949-423-7811;

15   m.    **FINANCIAL SOLUTIONS CONSUMER CENTER**, 13681 Newport Ave.,

16         Suite 8348, Tustin CA 92780;

17   n.    **LEGAL CONSUMER CREDIT INSTITUTE**, LLC., 202 Fashion Ln, Ste 210,

18         Tustin CA 92780-3320, Phone: 800-698-1855;

19   o.    **LEGAL SERVICES SUPPORT GROUP, LLC**, 2480 Irvine Blvd Apt 180,

20         Tustin CA 92782-8028.

21   p.    **LIBERTY FINANCIAL USA LLC**., 13681 Newport Ave Ste 8348, Tustin CA

22         92780

23   q.    **LYNCH FINANCIAL SOLUTIONS, INC**., 4521 PGA Blvd Ste 150, Palm

24         Beach Gardens FL 33418-3997, Phone: 800-957-0701;

25   r.    **LYNCH FINANCIAL SOLUTIONS, INC.**, 5200 N Flagler Dr Apt 405, West

26         Palm Beach FL 33407-2774;

27

28

1    s.    **LYNCH FINANCIAL SOLUTIONS, INC**., 1030 Summit Place Cir Apt B, West

2         Palm Beach FL 33415-4700; &

3    t.    **LYNCH FINANCIAL SOLUTIONS, INC**., 2480 Irvine Blvd Apt 180, Tustin

4         CA 92782-8028.

5    u.    **LYNCH FINANCIAL SOLUTIONS, INC**., 13681 Newport Ave., Suite 8348,

6         Tustin CA 92780;

7    v.    **PHOENIX FINANCIAL SOLUTIONS, LLC**, 13681 Newport Ave., Suite 8348,

8         Tustin CA 92780;

9    w.    **WYNN AND LYNCH HOLDINGS, LLC**, 120 Tustin Ave., Suite C #1025,

10        Newport Beach, CA 92663

11   128.  Official Form 106A/B, Schedule A/B: Property, Part 1, Question #30. Other amounts

12        someone owes you. The Debtor only listed two claims: Gabriel Jaime Gomez $113,000 Mr

13        Gomez lives in Columbia, Statute of limitations has expired $0.00; & Scott Campbell owes

14        $ 5,000 Statute of limitations is expired, no value or legal claim $0.00. However, that is

15        false. The Debtor omitted the following counterclaims/judgments that he filed in the

16        following four (4) lawsuits:

17   a.    **OC WEST, LLC VS. THOMAS J. LYNCH, FINANCIAL SOLUTIONS**

18        **SERVICE CENTER, LLC**, Case Number: 30-2018-00983118-CU-CL-CJC,

19        Superior Court of California, County of Orange

20   b.    **THOMAS J LYNCH AND MARY ANN LYNCH V. HEATHER CLARE**

21        **FITZGERALD**, Case Number: S648949, Superior Court of California, County of

22        San Diego

23   c.    **THOMAS LYNCH VS MARYANA GOMEZ-LYNCH**, Case Number:

24        16D000271, Superior Court of California, County of Orange

25   d.    **THOMAS LYNCH VS. LIBERTY DEBT SOLUTION, LLC, BRIAN**

26        **ROCHE**, Case Number: 30-2018-01016550-CU-OE-CJC.

27

28

1      **The Debtor lacks standing to prosecute his cross-complaints**. *Local Nos. 175 & 505*

2 *Pension Trust v. Anchor Capitol Advisors*, 498 F.3d 920, 923 (9th Cir. 2007) (quoting *Lujan v.*

3 *Defenders of Wildlife*, 504 U.S. 555, 561 (1992)) ("Standing is the threshold issue of any action, a

4 matter of jurisdiction because 'the core component of standing is an essential and unchanging part

5 of the case-or-controversy requirement of Article III.'"). When the Debtor filed his bankruptcy

6 petition, he created a bankruptcy estate. 11 U.S.C. § 541(a) ("The commencement of a case under

7 section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following

8 property, wherever located and by whomever held: . . . all legal or equitable interests of the debtor

9 in property as of the commencement of the case . . . . [and] [a]ny interest in property that the estate

10 acquires after the commencement of the case."). Section 541 is broad in scope and includes causes

11 of action. *United States v. Whiting Pools, Inc*., 462 U.S. 198, 205 n.9 (1983). Where the events

12 giving rise to a Plaintiffs' claim occur before the plaintiff files for bankruptcy, the claim is part of

13 the bankruptcy estate, whether or not the claim is properly disclosed to the Bankruptcy Court.

14 *Wieburg v. GTE Sw. Inc*., 272 F.3d 302, 306 (5th Cir. 2001).

15      **The bankruptcy Trustee, and not the Debtor, has the exclusive right to sue on behalf**

16 **of the bankruptcy estate**. *In re Estate of Spirtos*, 443 F.3d 1172, 1176 (9th Cir. 2006) ("[T]he

17 bankruptcy code endows the bankruptcy trustee with the exclusive right to sue on behalf of the

18 estate."); see also 11 U.S.C. § 323(b) ("The trustee in a case under this title has capacity to sue and

19 be sued."); *Wieburg*, 272 F.3d at 307 ("Trustee is the real party in interest and . . . Wieburg lacked

20 standing to pursue the discrimination claims."); *In re Eisen*, 31 F.3d 1447, 1451 n.2 (9th Cir.

21 1994) ("Once appointed a trustee, the debtor's assets and claims pass to the trustee, making the

22 trustee the proper party in interest, and the only party with standing to appeal the bankruptcy

23 court's order.") (citation omitted) (internal quotation marks omitted); *Sierra Switchboard Co. v.*

24 *Westinghouse Elec. Corp*., 789 F.2d 705, 707–09 (9th Cir. 1986) (holding that debtor's claim of

25 emotional distress properly belonged to the bankruptcy estate). Here, there is no dispute that the

26 events giving rise to the Debtor's cross-claims occurred before he filed for bankruptcy. Further,

27

28

1    the Debtor failed to disclose his cross-claim to the Bankruptcy Court. Consequently, the Debtor's

2    cross-claims are the property of the bankruptcy estate, and the Trustee alone has the capacity to

3    sue on behalf of the bankruptcy estate.

4          **The Bankruptcy Code vests the bankruptcy trustee alone with the right to sue on**

5    **behalf of the estate under 11 U.S.C. § 323(a)**. Section 323 states that "[t]he Trustee in a

6    [bankruptcy] case is the representative of the estate" and "has capacity to sue and be sued." The

7    trustee's capacity to sue on behalf of the estate is exclusive. See, e.g., *Estate of Spirtos v. One San*

8    *Bernardino Cnty*., Super. Ct. Case No. SPR 02211, 443 F.3d 1172, 1176 (9th Cir. 2006) ("We

9    therefore reaffirm our previous reasoning and that of our sister circuits and hold that the

10   bankruptcy code endows the bankruptcy trustee with the exclusive right to sue on behalf of the

11   estate."). See *In re Eisen*, 31 F. 3d 1447 (9th Cir.1994) which states at footnote 2:  Under section

12   323 of the Bankruptcy Code, a trustee is the representative of the debtor's estate and has the

13   capacity to sue and be sued. 11 U.S.C. Sec. 323 (1988). Once appointed a trustee, the debtor's

14   assets and claims pass to the trustee, making the trustee "the proper party in interest, and the only

15   party with standing to appeal the bankruptcy court's order." *Hancock Bank v. Jefferson*, 73 B.R.

16   183, 185 (Bankr.S.D.Miss.1986) (citing *Skelton v. Clements*, 408 F.2d 353,354 (9th Cir.1969)

17   (trustee vested with causes of action and with bankrupt's personal property, so bankrupt is not a

18   "person aggrieved" to ask for review of referee's Order)). Thus, as trustee, Moneymaker is vested

19   with Eisen's causes of action, rendering Eisen with no standing to appeal.

20         Also see, *Turner v Cook*, 362 F. 3d 1219 (9th Cir. 2004), which states: Because Stephen

21   Turner has filed for bankruptcy in the United States Bankruptcy Court, Northern District of

22   California, he is no longer a real party in interest in this matter and has no standing to pursue this

23   appeal. When Turner declared bankruptcy, all the "legal or equitable interests" he had in his

24   property became the property of the bankruptcy estate and are represented by the bankruptcy

25   trustee. See 11 U.S.C. § 541(a)(I). Causes of action are among such legal or equitable interests.

26   *Sierra Switchboard Co. v. Westinghouse Elec. Corp*.789 F.2d 705, 707 (9th Cir.1986).

27

28

1  Further, there is nothing in the Debtor's *Schedule B* and in his *Statement of Financial Affairs*

2  regarding any cross-claims by the Debtor. Debtor's *Declaration to his Schedules and Statement of*

3  *Financial Affairs* testified that he had listed all of his assets and that the answers in his petition and

4  schedules and Statement of Financial Affairs were "true and correct." At the Debtor's 341(A)

5  bankruptcy hearing, Debtor testified that he had listed all of his assets and that the answers in his

6  petition and schedules were "true and correct." He did not mention these actions.

7      **The Debtor is barred from pursuing any cross-claim he failed to list**. Under the

8  doctrine of judicial estoppel, Debtor is barred from pursuing any claim for damages he failed to

9  list on his schedules. See *Hamilton v State Farm*, 270 F.3d 778 (9th Cir. 2004), which states at

10  784: Judicial Estoppel will be imposed when the Debtor has knowledge of enough facts to know a

11  potential cause of action exists during the pendency of the bankruptcy, but fails to amend

12  schedules or disclosure statements to identify the cause of action as a contingent asset.

13      The Debtor clearly knew of the pendency of his four cross-claims when he filed

14  bankruptcy. The Debtor derived an unfair advantage in the bankruptcy court by failing to list the

15  cross-claims as assets of his estate. His failure to list his cross-claims as assets on his bankruptcy

16  schedules deceived the bankruptcy court and his creditors, who relied on the schedules to

17  determine what action, if any, they would take in the matter. This form of gamesmanship by the

18  Debtor is contrary to a primary rationale for the judicial estoppel doctrine; namely, to protect the

19  integrity of the judicial system. As the recent case of *George v. Fresenius Medical Care N.A.*,

20  reminds us, 3:15-cv-00014-RLB: A chapter (13) petitioner could bring a suit, omit that suit from

21  the asset schedule, and adopt a wait-and-see strategy. If the unlisted lawsuit has promise, the

22  debtor could then voluntarily dismiss the chapter (13) petition, even after confirmation. That

23  approach would undermine the integrity of the judicial process.

24      Further, there is no evidence to suggest that the Debtor's omissions have been inadvertent

25  or mistaken and that, weighing the factors set forth in *New Hampshire v. Maine*, 532 U.S. 742,

26  750–51 (2001), and *Ah Quin v. County of Kauai Department of Transportation*, 733 F.3d 267 (9th

27

28

4/17-1:34pm                                    -63-

1  Cir. 2013), judicial estoppel bars these cross-actions

2  129.  Official Form 106A/B, Schedule A/B: Property, Part 1, Question # 42, Interests in

3      partnerships or joint ventures, the Debtor only listed 50% of Café. That is false. The

4      Debtor has partnership interests in the following twenty-three (23) partnerships (none were

5      listed):

6      a.      **APHEX PROCESSING CENTER, INC.,** 9741 Bolsa Ave, Suite 217,

7              Westminster CA 92683;

8      b.      **APHEX PROCESSING CENTER, INC.,** 1740 H Dell Range Blvd #281

9              Cheyenne WY 82009;

10     c.      **BRIDGELINK INSURANCE AND FINANCIAL SERVICES, INC**., 13681

11             Newport Ave., Suite 8348, Tustin CA 92780;

12     d.      **BROCATO ENTERPRISES, INC**., 4769 Mount Ashmun Drive, San Diego CA

13             92111;

14     e.      **CAFÉ DE LA MONTANA, LLC**, 13681 Newport Ave., Suite 8348, Tustin CA

15             92780;

16     f.      **COLOMBIA DIRECT GROUP S.A.S,** Pueblo Rico-Tarso, Antioquia, Colombia;

17     g.      **COLOMBIA DIRECT GROUP, LLC**, 13681 Newport Ave., Suite 8348, Tustin

18             CA 92780;

19     h.      **CONSUMER AFFAIRS LAW CENTER, INC**., 1120 Sycamore Avenue, Suite

20             2F, Vista CA 92081;

21     i.      **CONSUMER AFFAIRS LEGAL CENTER, INC**., 17461 Derian Ave Ste 200,

22             Irvine CA 92614-5820;

23     j.      **CONSUMER AFFAIRS PROCESSING CENTER INC**., 17461 Derian Ave Ste

24             200, Irvine CA 92614-5820;

25     k.      **FINANCIAL SOLUTIONS, INC.,** 13681 Newport Ave, Tustin CA 92780-4689,

26             800-793-5357;

27

28

1   l.   **FINANCIAL SOLUTIONS SERVICE CENTER LLC.**, 13681 Newport Ave,
2        Tustin CA 92780-4689, Phone: 949-423-7811;

3   m.   **FINANCIAL SOLUTIONS CONSUMER CENTER**, 13681 Newport Ave.,
4        Suite 8348, Tustin CA 92780;

5   n.   **LEGAL CONSUMER CREDIT INSTITUTE, LLC.**, 202 Fashion Ln Ste 210,
6        Tustin CA 92780-3320;

7   o.   **LEGAL SERVICES SUPPORT GROUP, LLC**, 2480 Irvine Blvd Apt 180,
8        Tustin CA 92782-8028;

9   p.   **LIBERTY FINANCIAL USA, LLC.**, 13681 Newport Ave Ste 8348, Tustin CA
10       92780;

11  q.   **LYNCH FINANCIAL SOLUTIONS, INC.**, 4521 PGA Blvd Ste 150, Palm
12       Beach Gardens FL 33418-3997;

13  r.   **LYNCH FINANCIAL SOLUTIONS, INC.**, 5200 N Flagler Dr Apt 405, West
14       Palm Beach FL 33407-2774;

15  s.   **LYNCH FINANCIAL SOLUTIONS, INC.**, 1030 Summit Place Cir Apt B, West
16       Palm Beach FL 33415-4700; &

17  t.   **LYNCH FINANCIAL SOLUTIONS, INC.**, 2480 Irvine Blvd Apt 180, Tustin
18       CA 92782-8028.

19  u.   **LYNCH FINANCIAL SOLUTIONS, INC.**, 13681 Newport Ave., Suite 8348,
20       Tustin CA 92780;

21  v.   **PHOENIX FINANCIAL SOLUTIONS, LLC**, 13681 Newport Ave., Suite 8348,
22       Tustin CA 92780;

23  w.   **WYNN AND LYNCH HOLDINGS, LLC**, 120 Tustin Ave., Suite C #1025,
24       Newport Beach CA 92663.

25  130.  Official Form 106D, Schedule D: Creditors Who Have Claims Secured by Property,
26        Question 1, Part 1, List All Secured Claims. Debtor only listed the following secured

27

28

4/17-1:34pm                              -65-

1  creditors: 2.1 Nuvision Federal Credit Union $13,559.00; 2.2 Toyota Motor Credit Co

2  $17,815.00; & 2.3 Toyota Motor Credit Co, $12,219.00. That is false. The Debtor omitted

3  four (4) other secured creditors:

4      a.    **SECURED PARTY JESSE CAVETT**, Filing Number: 177590904547,

5          Document Number: 61979340002, Creditor's address: 120 Tustin Ave Unit 144,

6          Newport Beach, CA 92663-4729, **assigned to Plaintiff OC West;**

7      b.    **SECURED PARTY PLAINTIFF OC WEST, LLC**, Filing Number: 18-

8          7631643726, Document Number: 67612460003, Creditor's address: 2510 E.

9          Sunset Road, Ste 5-518, Las Vegas, NV 89120;

10      c.    **SECURED PARTY PLAINTIFF LIBERTY DEBT SOLUTION, LLC**, Filing

11          Number: 18-7631643726, Document Number: 67612460003, Creditor's address:

12          2510 E. Sunset Road, Ste 5-518, Las Vegas, NV 89120;

13      d.    **SECURED PARTY PLAINTIFF LIBERTY FINANCIAL USA, LLC**, Filing

14          Number: 18-7631643726, Document Number: 67612460003, Creditor's address:

15          2510 E. Sunset Road, Ste 5-518, Las Vegas, NV 89120;

16  131.  Official Form 107, Statement of Financial Affairs for Individuals Filing for Bankruptcy,

17  Part 1, Question 2, 2. During the last 3 years, have you lived anywhere other than where

18  you live now? The Debtor only listed one address at 792 Center St., Costa Mesa, CA

19  92627 July/2015 - August 2018. That is false. The Debtor listed at least five other multiple

20  address in various dealings:

21      a.    **2480 IRVINE BLVD APT 392, Tustin CA 92782-8039, ORANGE COUNTY**

22          (Aug 2005 - Oct 2017);

23      b.    **13681 NEWPORT AVE APT 8348, Tustin CA 92780-4689, ORANGE**

24          **COUNTY, Phone Number: 714-417-8233, Phone Number: 714-474-9175,**

25          **Phone Number: 949-423-7811** (Mar 2007 - Jan 2018)

26      c.    **5200 N FLAGLER DR APT 405, WEST Palm Beach FL 33407-2774, PALM**

27

28

1              **BEACH COUNTY, Phone Number: 714-321-6971** (Mar 2004 - Dec 2017)

2        d.     **424 COLTON ST, NEWPORT BEACH, CA 92663-1812, ORANGE COUNTY**

3              (2004 - Jul 2015)

4        e.     **367 LINDELL AVE, EL CAJON, CA 92020-6107, SAN DIEGO COUNTY**

5              (May 2013 - Mar 2014)

6  132.    Official Form 107, Statement of Financial Affairs for Individuals Filing for Bankruptcy,

7          Part 1, Question 3, Within the last 8 years, did you ever live with a spouse or legal

8          equivalent in a community property state or territory? (Community property states and

9          territories include Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto

10         Rico, Texas, Washington and Wisconsin), the Debtor wrote none. That was false. The

11         Debtor lived with his wife **MARYANNE GOMEZ-LYNCH** at:

12        a.     **424 COLTON ST, NEWPORT BEACH CA 92663-1812**

13        b.     **6787 FINDLEY CIRCLE, HUNTINGTON BEACH CA 92648**

14  133.    Official Form 107, Statement of Financial Affairs for Individuals Filing for Bankruptcy,

15          Part 11, Question 28, Within 2 years before you filed for bankruptcy, did you give a

16          financial statement to anyone about your business? Include all financial institutions,

17          creditors, or other parties. The Debtor wrote "none." That is false. The Debtor submitted at

18          least twelve (12) loan applications and financial statements that he omitted from his

19          bankruptcy petition, including but not limited to:

20        a.     **NUVISION FEDERAL CREDIT UNION**

21        b.     **TOYOTA MOTOR CREDIT CORPORATION** account ending in A166;

22        c.     **TOYOTA MOTOR CREDIT CORPORATION** account ending in Z991;

23        d.     **FAST MONEY LOAN**;

24        e.     **YTEL, INC**.;

25        f.     **RING CENTRAL, INC.**;

26        g.     **DEBT PAY PRO, INC**.;

27

28

1    h.    **VELOCIFY, INC.**;

2    i.    **SECURE ACCOUNT SERVICE, LLC**;

3    j.    **RELIANT ACCOUNT MANAGEMENT, LLC**;

4    k.    **EPPS, LLC**; and

5    l.    **GLOBAL CLIENT SOLUTIONS, LLC**.

6    134.    Plaintiffs are informed and believe and based thereupon allege that debtor has violated 11

7    U.S.C. § 727(a)(2)(A) in that: Within the year of the Petition Date, Debtor received

8    $5,000.00 of income and concealed his income from his Petition and Schedules.

9    a.    Official Form F-1--2-1, *Declaration by Debtor(s) as to Whether Income Was*

10    *Received from an Employer Within 60 Days of the Petition Date* as required by 11

11    U.S.C. § 521(a)(1)(B)(iv) [Doc-3], the Debtor wrote on 1-15-2019 that he was not

12    paid by an employer because he was either self-employed or not employed. That

13    was false. The Debtor testified at his 4-3-2019 341 examination that he received

14    $5,000.00 in income pre-petition, $2,500.00 on 12-16-2018, and another $2,500.00

15    on 1-15-2019 for a consulting job he did for a bankruptcy attorney named Robin to

16    set up his phone system. The Debtor also testified that he received from Robin an

17    additional $5,000.00 post-petition: $2,500.00 on 2-15-2019 and another $2,500,.00

18    thereafter.

19    135.    Debtor has knowingly and fraudulently, in or in connection with his Chapter 7 case, made

20    one or more false oaths as alleged above in violation of 11 U.S.C. § 727(a)(4).

21    136.    Debtor signed his petitions on under penalty of perjury.

22    137.    Defendant testified falsely to the accuracy of his Schedules and Statement of Financial

23    Affairs.

24    138.    The false oath on his petition is material and frustrate the proper administration of Debtor's

25    estate, and was made knowingly and with the intent to defraud the Court, the Trustee and

26    Debtor's secured and unsecured creditors.

27

28

4/17-1:34pm

139.    Defendant's discharge should be denied pursuant to 11 U.S.C. § 727(a)(4)(A).

**TENTH CAUSE OF ACTION**
**DENIAL OF DISCHARGE UNDER 11 U.S.C. § 727(a)(4)(D)**
(*For withholding from an officer of the estate any recorded information, including books,*
*documents, records, and papers, relating to a debtor's property or financial affairs*)

140.    Plaintiffs repeat, reallege and embody herein by this reference paragraphs 1-139 above, as

if fully set forth herein.

141.    Following Defendant's 341 Exam on February 27, 2019, and at the request of the US

Trustee, Plaintiffs provided Defendant and his attorney on March 1, 2019 with a written

list of documents and information to be produced prior to the Meeting of Creditors on

April 3, 2019. The list included, but was not limited to:

a.    Last filed federal income tax return for Thomas Joseph Lynch.

b.    Copy of lease for the Findley Circle property and copy of any eviction notice.

c.    Copy of lease for 792 Center St., Costa Mesa CA 92627

d.    For each entity (corporation, partnership or LLC) in which the Debtor owns an

interest over the last 4 years, domestically or internationally:

(I) Bank statements from January 1, 2017 forward for all business accounts,

including but not limited to Wells Fargo and Chase.

(ii) Check register or cancelled checks for each of the above accounts for the same

period (if there is not a complete check register or check ledger, then cancelled

checks are necessary)

(iii) Most recent financial statement (income and expense and balance sheet)

(iv) Tax return

(v) A list of all other entities (corporations, partnerships or LLCs) owned or

controlled by any of the entities described in Paragraph d above.

e.    All documents pertaining to any loans taken against the Debtor's Porsche Carrera

VIN 9114400309, and all documents pertaining to any sale of that vehicle. This

1    request includes but is not limited to any loan from Fast Money Loan, as well as

2    any purchase of the vehicle by Ross Tesser.

3    f.    For each of the Debtor's personal bank accounts:

4        (I) Bank statements from January 1, 2017 forward

5        (ii) Check register or cancelled checks for the same period (if there is not a

6        complete check register or check ledger, then cancelled checks are necessary)

7    g.    Judgment for dissolution of marriage, property settlement agreement and property

8        division judgment

9    h.    List of all software programs patents or licenses owned by the Debtor or by any

10        entity in which the Debtor owns an interest, or is the officer or manager, including

11        but not limited to the software CRM system, including the estimated value of each

12        program, patent or license.

13    i.    Inventory of all computers and phone systems owned by the Debtor or by any entity

14        in which the Debtor owns an interest, including estimated value of same.

15    j.    All written agreements between the Debtor and Ryan Stimson relating to Aphex,

16        Ira Frazer, and Thomas More.

17    k.    Inventory of all property in storage, with estimated value.

18    l.    All documents related to monies owed to John Hung Nguyen.

19    m.    All documents relating to any loan taken against the Debtor's Harley Davidson

20        VIN 1HD1AAK188Y047910.

21    n.    Copies of the lease auto purchase and auto lease agreements listed in the Debtor's

22        Schedule D.

23    o.    All documents showing ownership and location of any real property, equipment,

24        coffee beans/seeds owned either by Maryana Gomez or by the Debtor. Including

25        but not limited to: the San Andres property and the house the Debtor describes as

26        "My wife and I have outside of Medellin close to the airport that sits on top of a

27

28

4/17-1:34pm

1          mountain"; all "coffee farms"; and the "San Jose Estate".

2      p.    Contact information for Gabriel Jaime Gomez.

3      q.    All documents establishing the ownership interest in Marsea Club, LLC, whether in

4            the Debtor's name or in the Debtor's ex-wife's name. The names of all entities

5            owned or controlled by Maryana Gomez in which the Debtor or any entity in which

6            the Debtor owns an interest.

7      r.    Formation documents for Phoenix Financial Solutions, LLC, including Operating

8            Agreement, articles, and any amendments thereto.

9      s.    Documents pertaining to the sale of the Debtor's Cadillac Escalade.

10   142.  On March 4, 2019, the US Trustee requested the Defendant and his attorney produce the

11          following documents addition to the documents on Plaintiffs list:

12      a.    Copy of labor complaint against Liberty Debt Solution LLC;

13      b.    Documents re: sale of Porsche to Ross Tesser;

14      c.    Amend to list assets listed in divorce documents--docs and info re: Marsea Club,

15            money to Gabriel Jaime Lopez--contact info, loan to Scott Campbell, CRM

16            software and value;

17      d.    Bank statements and check registers/canceled checks on all accounts from Jan-2017

18            to present;

19      e.    Any corporate returns not already produced;

20      f.    List in Schedule B and SOFA any and all business interests within last four years;

21            &

22      g.    International business interests.

23   143.   In an email and letter dated April 1, 2019, Defendant and his counsel informed the US

24          Trustee and Plaintiffs that:

25      a.    Thomas Lynch does not want, and is not obliged to provide documents such as his

26            tax returns, bank statements, his confidential marital settlement agreement, or other

27

28

4/17-1:34pm                          -71-

1     sensitive documents;

2     b.     Plaintiff is not entitled to receive copies of such documents;

3     c.     A copy of the last filed federal income tax return for Thomas Joseph Lynch will not

4            be provided to Plaintiff;

5     d.     Check register or cancelled checks for the period of January 1, 2017 forward will

6            not be provided to Plaintiff;

7     e.     That the CRM system is non-operational and has no value;

8     f.     Bill of sale relating to Aphex, Ira Frazer, and Thomas Moore will not be provided

9            to Plaintiff;

10    g.     Ownership documents of any real property, equipment, coffee beans or seeds

11           because Defendant either doesn't own it or never has, however does reference a

12           piece of property owned by his ex-wife Maryanna Gomez who received it as an

13           inheritance from her father's passing, which was part of Defendant's divorce

14           proceeding, and all of which Defendant refuses to provide to Plaintiff, among other

15           books, documents, records and papers Defendant refuses to produce due to it being

16           concealed, destroyed, mutilated, falsified, or preserved;

17    144.   11 U.S.C. § 727(a)(4)(D) provides that a Court may deny a debtor's discharge if the debtor

18           withholds from an officer of the estate any recorded information, including books,

19           documents, records, and papers, relating to a debtor's property or financial affairs.

20    145.   Defendant's discharge should be denied pursuant to 11 U.S.C. § 727(a)(4)(D).

21                              **ELEVENTH CAUSE OF ACTION**
                      **DENIAL OF DISCHARGE UNDER 11 U.S.C. § 727(a)(5)**
22                   (*For failure to explain satisfactorily any loss of assets or*
23                    *deficiency of assets  to meet the debtor's liabilities*)

24    146.   Plaintiffs repeat, reallege and embody herein by this reference paragraphs 1-145 above, as

25           if fully set forth herein.

26    147.   Pursuant to 11 U.S.C. § 727(a) (5), a debtor who, "has failed to explain satisfactorily,

27

28

      4/17-1:34pm                              -72-

1   before the determination of a denial of discharge under this paragraph, any loss of assets or

2   deficiency of assets to meet the debtor's liabilities" is not entitled to a discharge of his

3   debts.

4   148.   Following Defendant's 341 Exam on February 27, 2019, and at the request of the US

5   Trustee, Plaintiffs provided Defendant and his attorney on March 1, 2019 with a written

6   list of documents and information to be produced prior to the Meeting of Creditors on

7   April 3, 2019. The list included, but was not limited to:

8   a.   Last filed federal income tax return for Thomas Joseph Lynch.

9   b.   Copy of lease for the Findley Circle property and copy of any eviction notice.

10   c.   Copy of lease for 792 Center St., Costa Mesa CA 92627

11   d.   For each entity (corporation, partnership or LLC) in which the Debtor owns an

12       interest over the last 4 years, domestically or internationally:

13       (I) Bank statements from January 1, 2017 forward for all business accounts,

14       including but not limited to Wells Fargo and Chase.

15       (ii) Check register or cancelled checks for each of the above accounts for the same

16       period (if there is not a complete check register or check ledger, then cancelled

17       checks are necessary)

18       (iii) Most recent financial statement (income and expense and balance sheet)

19       (iv) Tax return

20       (v) A list of all other entities (corporations, partnerships or LLCs) owned or

21       controlled by any of the entities described in Paragraph d above.

22   e.   All documents pertaining to any loans taken against the Debtor's Porsche Carrera

23       VIN 9114400309, and all documents pertaining to any sale of that vehicle. This

24       request includes but is not limited to any loan from Fast Money Loan, as well as

25       any purchase of the vehicle by Ross Tesser.

26   f.   For each of the Debtor's personal bank accounts:

27

28

4/17-1:34pm                                           -73-

1        (I) Bank statements from January 1, 2017 forward

2        (ii) Check register or cancelled checks for the same period (if there is not a

3        complete check register or check ledger, then cancelled checks are necessary)

4    g.    Judgment for dissolution of marriage, property settlement agreement and property

5        division judgment

6    h.    List of all software programs patents or licenses owned by the Debtor or by any

7        entity in which the Debtor owns an interest, or is the officer or manager, including

8        but not limited to the software CRM system, including the estimated value of each

9        program, patent or license.

10   i.    Inventory of all computers and phone systems owned by the Debtor or by any entity

11       in which the Debtor owns an interest, including estimated value of same.

12   j.    All written agreements between the Debtor and Ryan Stimson relating to Aphex,

13       Ira Frazer, and Thomas More.

14   k.    Inventory of all property in storage, with estimated value.

15   l.    All documents related to monies owed to John Hung Nguyen.

16   m.    All documents relating to any loan taken against the Debtor's Harley Davidson

17       VIN 1HD1AAK188Y047910.

18   n.    Copies of the lease auto purchase and auto lease agreements listed in the Debtor's

19       Schedule D.

20   o.    All documents showing ownership and location of any real property, equipment,

21       coffee beans/seeds owned either by Maryana Gomez or by the Debtor. Including

22       but not limited to: the San Andres property and the house the Debtor describes as

23       "My wife and I have outside of Medellin close to the airport that sits on top of a

24       mountain"; all "coffee farms"; and the "San Jose Estate".

25   p.    Contact information for Gabriel Jaime Gomez.

26   q.    All documents establishing the ownership interest in Marsea Club, LLC, whether in

27

28

4/17-1:34pm

1    the Debtor's name or in the Debtor's ex-wife's name. The names of all entities

2    owned or controlled by Maryana Gomez in which the Debtor or any entity in which

3    the Debtor owns an interest.

4    r.    Formation documents for Phoenix Financial Solutions, LLC, including Operating

5    Agreement, articles, and any amendments thereto.

6    s.    Documents pertaining to the sale of the Debtor's Cadillac Escalade.

7    149.   On March 4, 2019, the US Trustee requested the following document requests that

8    Defendant and his attorney produce in addition to the documents on Plaintiffs list:

9    a.    Copy of labor complaint against Liberty Debt Solution LLC

10    b.    Documents re: sale of Porsche to Ross Tesser;

11    c.    Amend to list assets listed in divorce documents--docs and info re: Marsea Club,

12    money to Gabriel Jaime Lopez--contact info, loan to Scott Campbell, CRM

13    software and value;

14    d.    Bank statements and check registers/canceled checks on all accounts from Jan-2017

15    to present;

16    e.    Any corporate returns not already produced;

17    f.    List in Schedule B and SOFA any and all business interests within last four years;

18    g.    International business interests.

19    150.   In an email and letter dated April 1, 2019, Defendant and his counsel informed the US

20    Trustee and Plaintiffs that:

21    a.    Thomas Lynch does not want, and is not obliged to provide documents such as his

22    tax returns, bank statements, his confidential marital settlement agreement, or other

23    sensitive documents;

24    b.    Plaintiff is not entitled to receive copies of such documents;

25    c.    A copy of the last filed federal income tax return for Thomas Joseph Lynch will not

26    be provided to Plaintiff;

27

28

1    d.  Check register or cancelled checks for the period of January 1, 2017 forward will

2       not be provided to Plaintiff;

3    e.  That the CRM system is non-operational and has no value;

4    f.  Bill of sale relating to Aphex, Ira Frazer, and Thomas Moore will not be provided

5       to Plaintiff;

6    g.  Ownership documents of any real property, equipment, coffee beans or seeds

7       because Defendant either doesn't own it or never has, however does reference a

8       piece of property owned by his ex-wife Maryanna Gomez who received it as an

9       inheritance from her father's passing, which was part of Defendant's divorce

10      proceeding, and all of which Defendant refuses to provide to Plaintiff, among other

11      books, documents, records and papers Defendant refuses to produce due to it being

12      concealed, destroyed, mutilated, falsified, or preserved;

13 151. Upon information and belief, Defendant failed to explain satisfactorily the disposition of

14    assets in his financial accounts.

15 152. Defendant's discharge should be denied pursuant to 11 U.S.C. § 727(a)(5).

16          **TWELFTH CAUSE OF ACTION**

       **DENIAL OF DISCHARGE UNDER 11 U.S.C. § 727(a)(12)(B)**

17 *(There are pending proceedings including state and federal criminal investigations in which there*

18   *is reasonable cause to believe that Defendant may be found guilty of a felony)*

19 153. Plaintiffs repeat, reallege and embody herein by this reference paragraphs 1-152 above, as

20    if fully set forth herein.

21 154. Pursuant to 11 U.S.C. § 727(12)(B), a "pending proceeding in which the debtor may be

22    found guilty of a felony" of the kind described in section 522(q)(1)(A) or liable for a debt

23    of the kind described in section 522(q)(1)(B), is not entitled to a discharge of his debts.

24 155. Currently, Defendant is under criminal investigation in at least 5 states and with 3 federal

25    agencies related to the criminal conduct complained of herein.

26 156. Defendant is also under criminal investigation in 7 states and with 3 federal agencies

27

28

1    related to his operations of numerous debt settlement companies in violation of numerous

2    court orders and through the looting of those clients' trust accounts between 2016-present,

3    for not performing services represented, defrauding these customers, wire fraud, and

4    moving them around through multiple payment processors SAS, RAM, EPPS, and GCS

5    and is facing imminent criminal charges and arrest for this various criminal activity.

6    157.   Defendant's discharge should be denied pursuant to 11 U.S.C. § 727(a)(12)(B).

7                                **PRAYER FOR RELIEF**

8        **WHEREFORE**, Plaintiffs respectfully request that this Court, upon trial:

9    1.   For a determination that the claim(s) for relief set forth herein are nondischargeable

10       pursuant to 11 U.S.C. § 523(a)(2)(A), in that they establish claims for money "obtained by

11       false pretenses, false representations, or actual fraud, other than a statement respecting the

12       debtor's or an insider's financial condition."

13   2.   For a determination that the claim(s) for relief set forth herein are nondischargeable

14       pursuant to 11 U.S.C. § 523(a)(2)(B), in that they establish claims for money obtained by

15       use of a statement in writing that is materially false, respecting the debtor's or nan insider's

16       financial condition, on which the creditor to whom the debtor is liable for such money,

17       property, services or credit reasonably relied, and that the debtor caused to be made or

18       published with the intent to deceive."

19   3.   For a determination that the claim(s) for relief set forth herein are nondischargeable

20       pursuant to 11 U.S.C. § 523(a)(4) in that they establish a claim for "fraud or defalcation

21       while acting in a fiduciary capacity, embezzlement, or larceny."

22   4.   For a determination that the claim(s) for relief set forth herein are nondischargeable

23       pursuant to 11 U.S.C. § 523(a)(6) in that they reflect "willful and malicious injury by the

24       debtor to another entity or the property of another entity."

25   5.   Order that the Defendants indebtedness to Plaintiffs in the amount of $5,800,300.00

26       constitutes a nondischargeable debt pursuant to 11 U.S.C. §§ 523(a)(2)(A), (B), (a)(4), &

27

28

4/17-1:34pm                                    -77-

1     (a)(6).

2     6.    Grant a nondischargeable judgment in the amount of $5,800,300.00 in favor of Plaintiffs

3     and against the Defendant plus prejudgment and post-judgment interest as provided by law,

4     reasonable attorneys' fees, costs and expenses, and for punitive and exemplary damages in

5     an amount to be proven at trial;

6     7.    Denying Debtor a discharge pursuant to 11 U.S.C. § 727(a)(2)(A);

7     8.    Denying Debtor a discharge pursuant to 11 U.S.C. § 727(a)(4)(B);

8     9.    Denying Debtor a discharge pursuant to 11 U.S.C. § 727(a)(3);

9     10.    Denying Debtor a discharge pursuant to 11 U.S.C. § 727(a)(4)(A);

10     11.    Denying Debtor a discharge pursuant to 11 U.S.C. § 727(a)(4)(D);

11     12.    Denying Debtor a discharge pursuant to 11 U.S.C. § 727(a)(5);

12     13.    Denying Debtor a discharge pursuant to 11 U.S.C. § 727(a)(12)(B);

13     14.    Grant Plaintiffs such other and further relief to which Plaintiffs may be justly entitled.

14

15     DATED:    April 17, 2019    LAW OFFICE OF BARUCH C. COHEN
         A Professional Law Corporation

16

17             By /S/ Baruch C. Cohen
             Baruch C. Cohen, Esq.
             *Attorneys For Plaintiffs* OC WEST, LLC, LIBERTY

18             DEBT SOLUTION, LLC, AND LIBERTY
             FINANCIAL USA, LLC

19

20

21

22

23

24

25

26

27

28

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

4929 Wilshire Boulevard, Suite 940, Los Angeles, California 90010

A true and correct copy of the foregoing document entitled: **SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING [LBR 7004–1]** and (2) the accompanying pleading(s) entitled: **SUMMONS & NOTICE OF STATUS CONFERENCE and COMPLAINT FOR NONDISCHARGEABILITY OF DEBT; DENIAL OF DISCHARGE; UNFAIR, UNLAWFUL & FRAUDULENT BUSINESS PRACTICES and NOTICE OF COMPLIANCE WITH LBR 7026-1** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005–2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 4/19/2019_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Patrick OKennedy (DB)   okennedylaw@gmail.com,  r55095@notify.bestcase.com
Karen S Naylor (TR)      alane@ringstadlaw. com, knaylor@IQ7technology.com
US Trustee (SA)          ustpregionl6.sa. ecf@usdoj.gov
Austin P Nagel (CR)      melissa@apnagellaw. com

☐  Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _4/19/2019_____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Personal Delivery
     Hon. Scott C. Clarkson, 411 West Fourth Street, Suite 5130, Santa Ana, CA 92701-4593
Priority Mail
     Patrick O'Kennedy 500 North State College Blvd, Suite 1100 Orange CA 92868
     Thomas Lynch 6787 Findley Circle, Huntington Beach CA 92648

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

_4/19/2019_    Baruch C. Cohen, Esq.    /s/ Barcuh C. Cohen
Date    Printed Name    Signature

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2016    **F 7004–1.SUMMONS.ADV.PROC**